194

638 P.2d 406

Ramon RUIZ, Plaintiff-Appellant,

v.

SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY, the Atchison, Topeka
and Santa Fe Railway Company and M.
D. Chavez, Defendants-Appellees.

No. 4951.

Court of Appeals of New Mexico.

Sept. 3, 1981.

Certiorari Quashed Dec. 22, 1981.

196

Frederick H. Sherman, Sherman & Sherman, P.C., Deming, for plaintiff-appellant.

Thomas J. McBride, Johnson & Lanphere, P.C., Albuquerque, for defendants-appellees.

OPINION

WALTERS, Judge.

Plaintiff appeals a summary judgment entered against him on his claims for compensatory and punitive damages against the defendant railways, employees of those railways, and against several John Doe corporations who seem to be included in acts of negligence alleged in Count III of plaintiff's complaint. We reverse.

At the place where the accident occurred in Deming, it was a common practice for nearby residents to cross the railroad tracks when going to and from their homes. There were two worn pathways across the tracks. On the day of the accident plaintiff proceeded on the path leading to the downtown area and encountered a standing train on the tracks. The train had been "made up" between 1:30 and 4:30 p. m., and the crew had parked it slightly to the west of the depot while they went to eat supper. After waiting an undisclosed length of time and not observing any activity or seeing anyone around, plaintiff climbed onto a coupling between the cars to cross to the continuation of the path on the other side of the track. While he was holding on with one hand, one foot on the coupling and the other free to swing down to the ground on the other side, the train jerked and began to move forward. Plaintiff was knocked down; his legs and right hand were run over by the wheels of the train. His legs were amputated; the hand was partially so and later surgically amputated.

The parties undertook vigorous discovery and the deposition testimony before the trial court disclosed that railway employees were aware that at the location where the accident occurred Deming residents, including schoolchildren, "quite often" went underneath or over the cars to get through a standing train. According to plaintiff, "hundreds" of Deming townspeople have crawled over or under standing trains, and it happens every day. They avoid using a nearby underpass because it is a longer route and because, in rainy weather, it becomes flooded. The train's fireman at the time of this incident said that trains have

remained stationary in the area from an hour to several days, "depending on the circumstances." All of the railway personnel present on the day of the accident said that the engineer gave the usual two-blast whistle before he started up the train; plaintiff did not remember hearing any sounds before he attempted to climb over the cars, and he heard no train whistles.

## I.

Summary judgment should not be granted if there are any material issues of fact. *See* the myriad of cases collected in the annotation following N.M.R.Civ.P. 56, N.M. S.A. 1978. It appears from the memorandum brief filed with the trial court in support of defendants' motion, and from the Answer Brief filed here, that the basis for granting summary judgment in favor of all defendants ·was a determination of plaintiff's contributory negligence as a matter of law.

There is no uniformity on that issue in the cases dealing with accidents which occur when plaintiffs are known by the railroad to regularly cross railroad tracks either through open spaces between cars, or over or under standing cars. *Compare, e.g., Jones v. Atlanta-Charlotte Air Line Ry. Co.,* 218 S.C. 537, 63 S.E.2d 476 (1951); *Stratton v. Southern Ry. Co.,* 190 F.2d 917 (4th Cir. 1951); *Baltimore & O.R. Co. v. Papa,* 133 F.2d 413 (D.C.App.1943); *Small v. Boston & Maine R.R.,* 85 N.H. 330, 159 A. 298 (1932); *Lerette v. Director Gen. of Railroads,* 306 Ill. 348, 137 N.E. 811 (1923); *Weatherford, M.W. & N.W. Ry. Co. v. Thomas,* 175 S.W. 822 (Tex.Civ.App.1915); *Catlett v. Colorado & S.Ry. Co.,* 56 Colo. 463, 139 P. 14 (1914); *Freeman v. Terry,* 144 S.W. 1016 (Tex.Civ. App.1912); *Sheridan v. Baltimore & O.R. Co.,* 101 Md. 50, 60 A. 280 (1905), with, *e.g., Chiribel v. Southern Pac. Co.,* 79 Nev. 311, 383 P.2d 1 (1963); *Starovetsky v. Pennsylvania R. Co.,* 328 Pa. 583, 195 A. 871 (1938); *Chesapeake v. O. Ry. Co. v. Daniel's Adm'r.,* 216 Ky. 89, 287 S.W. 217 (1926); *Rodriguez v. International & G.N.R. Co.,* 27 Tex.Civ. App. 325, 64 S.W. 1005 (1901); *Lewis v. Baltimore & O.R. Co.,* 38 Md. 588, 17 A.R. 521 (1873).

The railroad accident decisions holding contributory negligence as a matter of law variously refer to (1) a safe alternative route available to plaintiff, *see Beck v. Southern Ry. Co.,* 149 N.C. 168, 62 S.E. 883 (1908); *Starovetsky, supra*; (2) plaintiff's voluntary assumption of an apparent risk, *Daniel's Adm'r.* and *Lewis, supra*; (3) violation by plaintiff of a statute or ordinance prohibiting clambering over, under, or through a train, *Corcoran v. St. Louis, I.M. & S.R. Co.,* 105 Mo. 399, 16 S.W. 411 (1891); or other similar principles of negligence law.

Most of the cases we have reviewed which reach the legal conclusion of contributory negligence have not discussed proximate cause, but have focused instead on the railroad's lack of knowledge or notice that the train is likely to be crossed, or upon the fixed conviction that plaintiff is obliged to know of the inherent danger, "in the absence of proof that he is an idiot," *Rodriguez, supra.*

On the other hand, those decisions requiring that the matter be submitted to a jury almost invariably have been concerned with the factual matters which raise questions such as a railroad's duty of care to a known trespasser (*see* Restatement of Torts (Second), § 334), or of its implied assent or invitation to cross the train by its long-standing acquiescence in the habit of persons to do so; or other justifying or excusing circumstances for plaintiff's conduct, *e.g., Lerette, Sheridan, Fruman, supra.* "Where it has been the custom or habit for people to cross over, under, or between cars of a train obstructing a crossing, the railroad is held to have the duty to exercise reasonable care." Annot., 27 A.L.R.2d at 379. This rule was recognized in a railroad accident case arising in New Mexico, *James v. Atchison, T. & S.F. Ry. Co.,* 464 F.2d 173 (10th Cir. 1972), the Tenth Circuit noting that New Mexico Uniform Jury Instruction 10.3 requires measurement of the railroad's "extent of duty" by consideration of the surrounding circumstances rather than by "a categorical approach based on the fact of trespass."

In *Weatherford, supra,* at 175 S.W. 825, the Texas Court of Civil Appeals said that "there was not necessarily any danger in crossing [over the couplings] * * * while the train was stationary. The danger was in the movement of the train without notice * * *." *Sheridan v. Baltimore & O.R. Co., supra,* at 60 A. 281, had earlier made the similar observation: "To cross over the bumpers between two freight cars, when at rest, is not necessarily a dangerous operation. The peril of the situation arises from the danger of the cars starting before the crossing is completed."

We are of the opinion that the instant case, according to the testimony offered by Mr. Ruiz, parallels almost identically the facts of *Stratton v. Southern Ry. Co.,* 190 F.2d 917 (4th Cir. 1951). There, the trial court's dismissal on grounds of failure to show negligence of the railway as the proximate cause of plaintiff's injury, and plaintiff's contributory negligence as a bar to recovery, was reversed on appeal, the court saying:

> And we do not think that, under the circumstances of the case, it could be said that recovery should be denied as a matter of law because of contributory negligence. In the first place, whether the plaintiff was guilty of contributory negligence was a question for the jury in view of the evidence that the cars had been standing on the crossing for a longer period of time than allowed by the city ordinance, that it could not be seen from the crossing that an engine was attached to them and that it was customary for persons to pass between cars when the crossing was blocked in this way * * *.
>
> In the second place, even if the plaintiff was guilty of negligence in going between the cars, it was for the jury to say whether the negligence of the defendant in moving the cars suddenly and violently without signal or warning was not the sole proximate cause of his injury * * * in view of the evidence as to the length of time that cars had been blocking the crossing and the custom of persons to cross between them in such circumstances.

In *Hunt v. Firestone Tire & Rubber Co.,* 448 P.2d 1018 (Okl.1968), the court explained that the analysis of proximate cause must be such as to establish it as the efficient cause which sets in motion the chain of circumstances leading to the injury; and if the negligence alleged merely furnishes a condition by which the injury was possible but a second independent act caused the injury, then the existence of the condition cannot be the proximate cause of the injury.

We have recently ruled, in *Sweenhart v. Co.-Con, Inc.,* 95 N.M. 773, 626 P.2d 310 (1981), that even though a prima facie showing of plaintiff's negligence has been made, summary judgment is improper if the issue of proximate cause remains. The language quoted above from the *Weatherford, Sheridan, Hunt,* and *Stratton* decisions clearly establishes a line of authority which places the questions of contributory negligence and proximate cause in cases of the kind now before us into the hands of the jury for determination.

The exposition of *Lerette, supra,* on proximate cause has frequently been cited in railroad accident cases. *See, e.g., Bonnier v. Chicago, B. & Q.R. Co.,* 2 Ill.2d 606, 119 N.E.2d 254 (1954); *Russell v. Richardson,* 302 Ill.App. 589, 24 N.E.2d 185 (1939). We quote with approval from *Lerette,* at 137 N.E. 813–814:

> Violation of a law at the time of an accident by one connected with it is usually evidence of negligence, but there remains a question of fact whether the illegal act is the proximate cause of the injury. The mere fact that plaintiff was violating a law [and, thus, was negligent per se] at the time he was injured ought not to bar his right to recover, any more than the fact that defendant was violating a law at the time plaintiff was injured ought to conclusively establish plaintiff's right to recover. Where the defense is that plaintiff's unlawful [or negligent] conduct at the time of the accident was the proximate cause of the accident, the difficult question presented

for determination is whether * * * [that] conduct was a direct and proximate cause contributing, with others, to the injury, or whether it was a mere condition of it. The mere fact that plaintiff was violating the law at the time he was injured will not bar his right to recover unless the unlawful act in some way proximately contributed to the accident in which he was injured. [Citations omitted.] In determining whether the * * * conduct of plaintiff will bar his right to recover, there must be kept in mind the distinction between that which directly and proximately produces, or helps to produce, the result as an efficient cause, and that which is a necessary condition or attendant circumstance of it. If the * * [plaintiff's] act is a mere condition which made it possible for the accident to occur, but is in itself no part of the accident, it will not bar recovery. It is, of course, an essential condition of most accidents that the injured party be where he was at the time he was in order for the injury to occur, and the fact that he would not have been there if he had not been violating the law is not, in itself, a defense. [Citations omitted.] Granting, but not deciding, that appellee's act in climbing through the string of cars, under the circumstances, was an illegal [or negligent] act, it is still a question of fact whether this * * * act was the proximate cause of the injury. [Citations omitted.] It is clear that appellee would not have been injured * * * if the cars had not been moved at the time and in the manner they were moved. It is therefore a controverted question of fact whether the act of appellee in climbing through the cars was the proximate cause of the injury received * * *.

Respecting the effect of custom and usage on the question of contributory negligence arising from plaintiff's negligence per se, our Supreme Court said a quarter of a century ago:

"The plaintiff * * * was not guilty of contributory negligence as a matter of law in driving upon the left hand side of the road, a jury question being presented under the testimony particularly as to the custom and usage and the topography of the road." Irwin v. Graham, 62 N.M. 72, 304 P.2d 875 (1957).

We approve the reasoning and result in Tupponce v. Pennsylvania R. Co., 65 Pa. D.&C. 238 (affd. 358 Pa. 589, 57 A.2d 898 (1948), where defendant's motion for judgment n.o.v. was denied. The court there said:

Defendant's only chance of success on this motion depends on demonstrating that plaintiff was guilty of contributory negligence, as a matter of law. To reach such a conclusion we must come finally to, and adopt the absolute rule that where a plaintiff crosses over a car, and mischief ensues to him, he has only himself to blame. And application of such an absolute rule would mean the refusal to consider or leave to the jury any concomitant circumstances on the question of contributory negligence. We are not disposed to an absolute rule declaring contributory negligence whenever a plaintiff crosses between cars * * *. The one rule to count upon is the usual one, that it depends on the circumstances, and those circumstances and the conclusion thereof are for the jury.

■ Summary judgment should not have been granted on the basis of plaintiff's contributory negligence as a matter of law. As Judge Wood said in Fitzgerald v. Valdez, 77 N.M. 769, 427 P.2d 655 (1967), the question of causation exists when the alleged negligence is negligence per se or common law negligence, and that question must be decided by the jury when one is timely demanded, as here.

## II.

Plaintiff claims that defendants are liable in strict liability. We have already decided that plaintiff is entitled to a trial on the question of common law negligence. We are unable to determine by the court's order of summary judgment that plaintiff's presumed count in strict liability, addressed in defendants' brief supporting the motion for

summary judgment, was also found to be without merit. We do not read Count III to allege strict liability, but assuming that the court decided it did and dismissed also for failure to state a claim in strict liability, that decision is affirmed.

This case is not concerned with a seller of a defective product unreasonably dangerous to the user or consumer, so as to call upon the provisions of § 402A of Restatement of Torts (Second). It bears no similarity to *Lay v. Vip's Big Boy Restaurant, Inc.*, 89 N.M. 155, 548 P.2d 117 (Ct. App.1976); *Stang v. Hertz Corp.*, 83 N.M. 730, 497 P.2d 732 (1972), or *Rudisaile v. Hawk Aviation, Inc.*, 92 N.M. 575, 592 P.2d 175 (1979), all of which dealt with a consumer injured by a defective product placed in the stream of commerce by a seller, lessor, retailer, or other provider of goods.

If, however, we are to consider plaintiff a user, § 402A of the *Restatement*, rather than §§ 519 and 520, also argued by plaintiff, would apply. Sections 519 and 520 discuss abnormally dangerous and ultrahazardous activities for which possessors of land might be strictly liable; Section 521 excepts common carriers in the performance of a public duty, and the comments under § 521 clearly indicate that the exception of common carriers is withdrawn only if the carrier is negligently unsafe in storing or carrying dangerous explosives. Explosives are not a part of this case.

We would note, too, that our Uniform Jury Instructions (Civil), both at the time this case was filed and now (*see* Chapter 10 of the prior law; Chapter 13 of the 1981 revised instructions), have never discussed tort liability under the "Owners and Occupiers of Land" chapter in terms of strict liability. Rather, the instructions are couched in terms of negligence and ordinary care. New Mexico's treatment of such torts, even against known trespassers, affirms the position taken by our Supreme Court in *Proctor v. Waxler*, 84 N.M. 361, 364, 503 P.2d 644 (1972), that although "the Restatement of the Law of Torts, as now amended, [is] persuasive authority entitled to great weight, it is not to be considered as precedent that this court is bound to follow at all times."

We can thus dispense with the strict liability considerations raised in the "500" series of the *Restatement*. New Mexico has not yet recognized the theory of a landowner's strict liability except in cases where his activity has involved the use of explosives. *Gutierrez v. Rio Rancho Estates, Inc.*, 93 N.M. 755, 605 P.2d 1154 (1980).

As we have already said, neither can strict *products* liability under § 402A apply, because plaintiff was not a user or consumer of a *product*. In *First Nat'l Bank, Albuquerque v. Nor-Am Agr. Prod. Inc.*, 88 N.M. 74, 537 P.2d 682 (Ct.App.1975), the *Restatement* definition of "user" and "consumer" was adopted. We recognized there that a user or consumer must first "acquire" the product, either directly from the manufacturer, seller, or retailer, or through a close and foreseeable association with one who has so acquired it. There is no acquisition of a product connected with the instant case. *Compare Rudisaile v. Hawk Aviation, Inc.*, 92 N.M. 575, 592 P.2d 175 (1979); *Stang v. Hertz Corp.*, 83 N.M. 730, 497 P.2d 732 (1972).

If by the longest stretch of the imagination plaintiff in this case could be considered a user or consumer of a service rather than of a product provided by defendants, he still would not be covered by the *Restatement*, since § 402A speaks only of a defective "product," not of a "negligent service." Providing negligent services may trigger ordinary negligence or breach of contract actions, *see Stock v. Pierce*, 96 N.M. 544, 632 P.2d 1182 (Ct.App.) filed June 30, 1981; or malpractice suits, *see Schrib v. Seidenberg*, 80 N.M. 573, 458 P.2d 825 (Ct. App.1969), but it does not form the basis for actions in strict liability.

If plaintiff's further argument on this issue can be read as a claim that some of the John Doe defendants furnished unsafe and defective freight cars, by reason of their failure to manufacture and distribute cars with "end platforms" which would have given plaintiff a safer place to cross,

we are still of the opinion that he fails to make a case of strict liability under § 402 of the *Restatement, supra.*

Privity is unnecessary, as we have heretofore observed, to create a situation of strict liability. *Stang, supra.* But plaintiff's use of railroad equipment was not the use contemplated by the manufacturer or seller, nor was he the "ordinary" user or consumer within the reasonable anticipation of the manufacturer or seller. *See* Comments "c," "i," and "1" to § 402A, *Restatement, supra.* "Consumption includes all ultimate uses *for which the product is intended* * * *." *Id.,* Comment "1." The strict liability rule of § 402A "applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer * * * * [and] must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.,* Comment "i." A manufacturer is not required to make a product safe for every conceivable use by every conceivable user. *See Skyhook v. Jasper,* 90 N.M. 143, 560 P.2d 934 (1977).

The facts of this case, as pleaded and as developed thus far in discovery, do not present an issue of strict liability.

### III.

Forty-three of defendants' objections to plaintiff's interrogatories were sustained by the trial court. We are asked to review the propriety of the trial court's rulings, and since this case will be remanded for trial, we do so.

Plaintiff's Count II sets forth a claim for punitive damages. Punitive damages may be awarded to punish the defendant, not to compensate for a loss by plaintiff, *Sanchez v. Dale Bellamah Homes of New Mexico, Inc.,* 76 N.M. 526, 417 P.2d 25 (1966), and as a warning to others, *Christman v. Voyer,* 92 N.M. 772, 595 P.2d 410 (Ct.App.1979). Recovery of punitive damages is permissible if the jury finds the wrongdoer's conduct to be willful, wanton,

malicious, reckless, oppressive, grossly negligent, *or* fraudulent and in bad faith, *Loucks v. Albuquerque Nat'l Bank,* 76 N.M. 735, 418 P.2d 191 (1966); N.M.U.J.I. (Civ.) 18.27, N.M.S.A. 1978; or when circumstances of aggravation are shown, *Colbert v. Journal Publishing Co.,* 19 N.M. 156, 142 P. 146 (1914). Any one of the reasons for assessing punitive damages is sufficient to sustain such an award. *Bank of New Mexico v. Rice,* 78 N.M. 170, 429 P.2d 368 (1967).

Defendants correctly surmise that if this case be reversed for trial it will be tried under principles of comparative negligence, because trial will commence after the opinion in *Claymore v. City of Albuquerque,* 96 N.M. 682, 634 P.2d 1234 (Ct.App.1980), *aff'd Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981), became final. In *Claymore* we said that the distinction between ordinary and gross negligence is abolished; ergo, defendants argue, the basis for imposition of punitive damages disappears. That is a false conclusion. A finding of "gross" negligence is only one reason for levying punitive damages; a jury might properly find defendant's conduct to be willful, wanton, malicious, reckless, oppressive or fraudulent, or so grossly negligent *as compared to* plaintiff's, that an award of punitive damages would be justified. *See Galindo v. Western States Collection Co.,* 82 N.M. 149, 477 P.2d 325 (Ct.App.1970). A close look at *Gray v. Esslinger,* 46 N.M. 421, 130 P.2d 24 (1942), in which the "gross negligence" concept was elucidated, discloses that the discussion resulted because New Mexico at that time did not "recognize the doctrine of comparative negligence" (*id.,* 46 N.M. at 428, 130 P.2d 24) and, therefore, a determination of "gross negligence" against the wrongdoer warranted denial to him of the defense of contributory negligence. In that sense only, "gross negligence" no longer need be shown—and is abolished—when deciding liability equivalent to one's comparative negligence. A finding of gross negligence, however, is still a sound basis for awarding punitive damages. Appellants have confused an analysis of comparative liability with grounds for punitive damages.

■ We examine, then, the interrogatories to which objections were sustained. The test is whether the information sought is "reasonably calculated to lead to discovery of admissible evidence" (Rule 26(B)(1), N.M.R.Civ.P., N.M.S.A. 1978) in support of plaintiff's claims for compensatory and punitive damages for the negligent acts alleged. The general rule governing discovery is toward liberality rather than limitation. *Griego v. Grieco*, 90 N.M. 174, 181, 561 P.2d 36 (Ct.App.1977). Trial courts more frequently abuse their discretion in disallowing discovery than in granting it. *See Davis v. Westland Dev. Co.*, 81 N.M. 296, 466 P.2d 862 (1970).

■ Although many of the interrogatories at issue could have been more precisely framed, the information sought is recognizable. Nos. 13 and 14 inquired about studies made by defendants, if any, regarding safer crossing equipment and protective devices available; No. 15 was a related question asking about complaints or communications to the railroad from any source regarding railroad crossings. No. 24 solicited information about anyone or any entity requesting installation of warning or safety equipment for pedestrian crossings at the site of the accident. Plaintiff contends that answers to these questions could develop information regarding defendants' notice and knowledge of a dangerous situation and of means by which to avoid the danger. Defendants' disregard of known safety measures, if shown, could tend to prove negligence and perhaps even wanton and reckless negligence. *See Snider v. Town of Silver City*, 56 N.M. 603, 247 P.2d 178 (1952). Plaintiff was entitled to discover the information asked for in those interrogatories.

■ The trial court upheld objections to Interrogatories 26 through 39 which were addressed to dividends paid by, market values, and net assets of, defendants and of corporations wholly-owned or controlled by defendants. The information was relevant to plaintiff's claim for punitive damages. New Mexico has adopted the general rule admitting evidence of a defendant's wealth for purposes of fixing the amount of punitive damages, if awarded. *Aragon v. General Elec. Cred. Corp.*, 89 N.M. 723, 557 P.2d 576 (Ct.App.1976). The interrogatories were calculated to discover admissible evidence and should have been answered. It is within the trial court's discretion to prohibit introduction of such evidence at trial unless and until such time as the jury has been furnished with proof of sufficiently aggravated conduct, if any, as would justify the jury's imposition of punitive damages.

Interrogatories 40 through 42 asked for statistics on the numbers of persons, pedestrians, and trespassers injured or killed on railroad property in the United States and in New Mexico for the past ten years. Nos. 46 and 49 sought the same information over the same period of time for injuries occurring in train yards and within municipality limits on railroad-controlled properties throughout the United States and New Mexico. Those questions apparently were intended to elicit information regarding the existence, and defendants' notice and knowledge, of an industry-wide concern. Nos. 43, 44, 45, 47, and 50, also objected to and held by the trial court as not required to be answered, posed the same questions but limited the inquiries to injuries and deaths resulting from activities of or upon lands controlled by defendants in New Mexico.

■ We think all of the interrogatories from Nos. 40 through 50 were properly submitted by plaintiff. Although some of the answers will overlap, as framed they will provide an analysis of defendants' accident history, if one exists, as compared with state and national statistics. Evidence of the happening of accidents at other places is ordinarily not admissible to show whether the danger of such an accident exists at the place in question. If, however, such evidence would have the tendency to make the existence of defendants' allegedly negligent omissions in this case, after notice and knowledge of danger, more or less probable, the evidence is relevant and admissible. N.M.R.Evid. 401, N.M.S.A. 1978. *Compare*

*McCormick v. Great Western Power Co.,*
214 Cal. 658, 8 P.2d 145, 81 A.L.R. 678 at
684, 687 (1932). Interrogatories 40 through
50 should be answered.

Plaintiff asked, in Nos. 51 through
56, for the number and amounts of cash
settlements made by defendants in the past
ten years for death and injury claims. Ob-
jections to those interrogatories were prop-
erly sustained. The law encourages settle-
ments and one ought not be subjected to an
inference that liability has been admitted
simply because a claim has been negotiated
or compromised. *Jones v. Jernigan*, 29
N.M. 399, 223 P. 100 (1924). In the form
asked, the interrogatories were objectiona-
ble.

Interrogatory 57 inquired about the
number of pedestrian injuries or deaths oc-
curring during the past ten years, involving
defendants' railways, which did not happen
as a result of the pedestrian being struck by
the head of the train. The question does
not appear difficult to answer and, again,
the information is relevant on the issue of
notice and knowledge. N.M.R.Evid. 401,
402, N.M.S.A. 1978. The question should be
answered.

Defendants were requested to
state, in Nos. 58 and 59, the number of New
Mexico pedestrian crossings over which de-
fendants operate their trains; how many
are located within each municipality; how
many are public and how many are private
crossings, and when each was constructed.
To the extent the answers will relate to
other interrogatories to be answered, this
information sought is also relevant to notice
and knowledge. Nos. 58 and 59 should be
answered.

No. 74 and 75 asked for informa-
tion relating only to A.T.&S.F. employees
on duty as flagman, watchmen or designat-
ed lookouts on June 19, 1978 at places
where pedestrians are known to cross. De-
fendant A.T.&S.F. should answer those in-
terrogatories because it is not unlikely that
the information sought will lead to admissi-
ble evidence on the questions of negligence,
notice and knowledge. N.M.R.Civ.P.
26(B)(1), *supra*.

No. 78 requested the names and
addresses of all A.T.&S.F. employees repri-
manded or warned for failing to ring bells,
blow whistles or otherwise appropriately
warn, and by whom. This information, as
it pertains to A.T.&S.F. employees on duty
at the time and place of the accident in
question, is discoverable and admissible;
however, the form of the interrogatory is,
in our opinion, exceedingly broad and the
trial court, in its discretion, could have so
viewed it. We note that defendants have
not stated, as required by N.M.R.Civ.P.
33(a), N.M.S.A. 1978, the reasons for their
objections to interrogatories not answered,
but the record indicates that a hearing was
conducted on defendants' objections and we
assume that reasons were given at the hear-
ing. The trial court's ruling will not be
disturbed. *Cf. Griego v. Grieco, supra.*

The interrogatory inquiring about
the number of freight cars without end
platforms in use on A.T.&S.F. trains, No.
84, is irrelevant in view of our discussion
under II above. The court's ruling on the
objection is sustained.

Plaintiff asked, in No. 91, for the
names and addresses of all railroad employ-
ees fired since January 1, 1974. Unless
limited to employees on duty at the time
and place of the accident complained of, or
to employees fired for negligence similar to
that complained of, that information is ir-
relevant. The trial court should so circum-
scribe the requirement of defendants to an-
swer that interrogatory.

IV.

Other "points" raised by plaintiff are ar-
guments that issues of fact existed on the
questions of defendants' obligation to warn,
failure to keep a look-out, lack of proper
safety training, degree of care required of a
landowner—all going to a determination of
defendants' negligence. We agree that
those are factual matters to be determined
by a jury, but they are not separate appel-
late issues requiring discussion. Whether,
also, defendants should have fenced the

property, in the absence of any statutory authority cited to us which requires it, is an argument plaintiff may be able to suggest to the jury but it is not a negligence issue for us to decide as a matter of law.

This appeal has been argued by the parties on the presumption that defendants were negligent and that plaintiff was contributorily negligent as a matter of law. The respective duties of plaintiff and defendants; whether any or all of the parties were negligent and, if so, to what degree; whether any acts of the corporations or their agents were wanton or recklessly heedless or otherwise of a nature to warrant punitive damages; and, if any such wanton conduct was conduct of the defendants' agents only, whether it was ratified by either or both of the corporate defendants, all are matters to be decided when this case is tried to a jury.

We reverse the summary judgment because of these existing issues of material fact and remand this case for reinstatement on the trial court's jury docket.

It is so ordered.

LOPEZ, J., concurs.

SUTIN, J., concurs in part, dissents in part.

SUTIN, Judge, concurring in part and dissenting in part.

I concur with Point II of the majority opinion on strict liability and otherwise I dissent.

A. *Rule 56(c) which relates to summary judgment should be amended by the Supreme Court.*

Unfortunately, the Supreme Court has not issued an order nor amended Rule 56(c) of the Rules of Civil Procedure to require trial courts to make findings, state specific reasons or explain the basis upon which summary judgments are granted. See, *Combs v. Fantastic Homes, Inc.*, 584 S.W.2d 340 (Tex.Civ.App.1979). Indictments against the model form of summary judgment were issued over a third of a century ago but district courts generally defeat the prosecution of the indictments.

Trial judges refuse to disclose the basis upon which their actions are taken with knowledge that summary judgment is a lethal weapon, applicable only when the claims made are groundless. Great care should be exercised in granting such judgments, mindful of its aims and targets and beware of overkill in their use. Wisely used, summary judgment is a praiseworthy time-saving device. Although prompt dispatch of judicial business is a virtue, it is not the sole nor primary purpose for which courts were established. An excuse for summary judgment has always been that they save time but denial of a trial on disputed facts is worse then delay. Heavy burdens due to excessive litigation may be lessened in district courts, but in an appeal, time, energy and work are wasted. Summary judgments are almost uniformly reversed.

The instant case is a shining example. The trial court granted summary judgment summarily. The necessary proverbial statement that there was "no genuine issue as to any material fact" was omitted. Rule 56(c) of the Rules of Civil Procedure. Plaintiff's complaint was dismissed with prejudice. On this basis alone, the summary judgment should be reversed and remanded. To hold otherwise would convert an appellate court into a trial court. This Court is not, and must not be, a trial court. Such a court has a duty more difficult and more important than ours. We begin our task where it leaves off.

Rule 56(c) should be amended by the Supreme Court.

B. *Defendants should be bound by admissions made on appeal.*

Plaintiff sued defendants on three counts: (1) negligence, (2) reckless and wanton conduct, and (3) creating a dangerous crossing. One of defendants' defenses was contributory negligence. Defendants' Answer Brief states:

All five points are answered herein by simply acknowledging that for the pur-

poses of this appeal *alone* the *defendants are presumed to have been negligent. The question of whether the defendants were negligent is not, however, the issue before this Court.* The issue is "Was the plaintiff, Ramon Ruiz, contributorily [sic] negligent as a matter of law and thereby precluded from recovery against the defendants, negligent or not?" *Such alleged negligence is specifically denied and only admitted arguendo, for purposes of this appeal.* [Emphasis added.]

In this appeal, defendants play the part of "Dr. Jekyll" in the trial court and "Mr. Hyde" up here. In the trial court, defendants claimed they were free of negligence and causation. No genuine issue as to these material facts was found by the court. In this appeal, defendants want us to presume that they were negligent. This means that we are allowed to draw inferences from facts and circumstances in the case which induce us to believe that defendants were in fact negligent. If this inducement is correct, defendants were rather persuasive in the trial court to obtain a dismissal with prejudice.

Such presumptions are rare indeed if defendants concede the crucial issue upon which their liability rests. After reversal and remand for trial in accordance with the majority opinion, defendants should not play the part of Houdini to escape liability once again. Despite this dissenting opinion that favors defendants under New Mexico law, defendants should not try to convince the trial court with incisive argument that defendants are free of negligence and proximate cause. These issues should be questions of fact for the jury. If defendants seek summary judgment again, a directed verdict or judgment notwithstanding the verdict, such motions should be summarily denied.

Procedural problems of this nature would not arise if the parties would request the trial court to specify each basis, and the reasons therefore, upon which summary judgment is granted, and the trial court complied with the request.

## C. *Defendants are entitled to summary judgment as a matter of law.*

The parties have overlooked a case directly in point. *Candelaria v. A., T. & S. F. R'y Co.,* 6 N.M. 266, 27 P. 497 (1891). Here, in Albuquerque, a former public road existed from time immemorial, which the railroad company, in the construction of its road, had not restored. A long distance south of the depot was a regular crossing both for vehicles and persons over the tracks upon a street called "Coal Avenue." Both employees and other persons were in the habit of crossing over the railroad tracks wherever they saw fit, without any regard to regular crossings. There were cars frequently standing on the tracks and foot passengers crossed over wherever they could get through between the cars. Plaintiff went across the railroad on business of his own, and while upon the main line walking north, he was struck by an engine and train of 24 cars, knocked from the track and injured. The trial court directed a verdict for the railroad which was affirmed on appeal. The court said:

> *Can it be contended that because persons were in the habit of crossing over the tracks wherever they pleased, without regard to the regular crossings (and for a long distance up and down the tracks this was done), this· fact would constitute a legal right for them to be upon the tracks of the defendant?* We think not * * * * [H]e chose to go upon the tracks of the defendant for his own convenience, and in so doing *he assumed the risk of his own conduct and became a trespasser, in contemplation of law.* [Id. 270–271, 27 P. 497.]
>
> * * * The plaintiff in this case being upon the track, using it for his own purposes as a public highway, the *defendant did not owe him the duty of doing acts to facilitate his trespass or to render it safe* * * *.
>
> *We think that the law is well settled that a railroad company is only liable, in the case of the trespasser who has been killed or injured by its trains, for the negligence of the defendant's servants af-*

ter the trespasser's presence upon the track has been discovered. The facts in this case present no such conduct as would constitute negligence on the part of the defendant after plaintiff's presence was discovered. *But suppose the defendant's servants to have been guilty of some degree of negligence, still the plaintiff is not entitled to recover, if he was guilty of contributory negligence.* * * * [Id. 273–274, 27 P. 497.]

It has been repeatedly held on the highest authority that a person crossing a railroad track at the regular, recognized crossing is compelled to use his senses both of sight and hearing for his own protection; and if he fails to do so, and is injured, he is guilty of negligence that will defeat a recovery by him. * * * [A] person walking upon the track of the railroad company without authority, and using it for a public highway, is held to a much higher degree of diligence, and takes a greater risk than he who crosses the track at a regular crossing * * * * "[T]he failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. * * *" [Id. 275–276, 27 P. 497.]

  *   *   *   *   *   *

The law as stated in the above decisions is the well settled law of this country, as declared by the courts of the United States, as well as by the weight of a long line of decisions in the courts of the different states. It is useless to continue the citation of cases wherein it is held that a person crossing a track of a railroad company must use his senses, both of sight and hearing, and any other reasonable care for his own protection, and if he does not do so he is guilty of contributory negligence and cannot recover, although there may have been negligence in some degree on the part of the defendant; *and also that, in the case of the trespasser upon the track, a much higher degree of care must be used.* [Id. 278, 27 P. 497.] [All emphasis added.]

See, Annot. *Liability of railroad to adult pedestrian attempting to pass over, under, or between cars obstructing crossing*, 27 A.L.R.2d 369 (1953).

*Heller v. New York, N. H. & H. R. Co.,* 265 F. 192, 194 (2nd Cir. 1920) defines "trespasser" as follows:

Every unauthorized entry on another's property is a trespass and any person who makes such an entry is a trespasser. A trespasser is one who goes upon the premises of another without invitation, express or implied, and does so out of curiosity, or for his own purposes or convenience, and not in the performance of any duty to such owner.

Ruiz was a trespasser. *Candelaria* remains the law of New Mexico. A review of the following railroad cases does not alter this law and, in some respects, supports it: *Price v. Pecos Val. & N.E. Ry. Co.,* 15 N.M. 348, 110 P. 565 (1910); *Padilla v. Atchison, T. & S. F. Ry. Co.,* 16 N.M. 576, 120 P. 724 (1911); *Morehead v. A., T. & S. F. Ry. Co.,* 27 N.M. 349, 201 P. 1048 (1921); *Vigil v. Atchison, T. & S. F. Ry. Co.,* 28 N.M. 581, 215 P. 971 (1923); *Sandoval v. Atchison, T. & S. F. Ry. Co.,* 30 N.M. 343, 233 P. 840 (1925); *Blewett v. Barnes,* 62 N.M. 300, 309 P.2d 976 (1957); *Apodaca v. Atchison, Topeka and Santa Fe Railroad,* 67 N.M. 227, 354 P.2d 524 (1960); *Landers v. Atchison, Topeka & Santa Fe Railway Co.,* 68 N.M. 130, 359 P.2d 522 (1961), and *Landers v. Atchison, Topeka & Santa Fe Railway Co.,* 73 N.M. 131, 386 P.2d 46 (1963).

Defendants are entitled to summary judgment as a matter of law because defendants, not having discovered the presence of plaintiff on their railroad tracks before his injury, owed no duty to plaintiff. If defendants were negligent in some way, plaintiff was contributorily negligent as a matter of law.

I reluctantly dissent on this point because *Candelaria* stands alone. It represents the judicial thought of the late 19th and early 20th century. Whether it should be reconsidered is not the duty of this Court.

Nevertheless, it is important to discuss other points raised in the majority opinion and by plaintiff.

### D. The doctrine of comparative negligence is not applicable upon reversal of this case for trial.

Judge Walters' opinion, page 413, states:

Defendants correctly surmise that if this case be reversed for trial it will be tried under principles of comparative negligence because trial will commence after the opinion in *Claymore v. City of Albuquerque*, 96 N.M. 682, 634 P.2d 1234 (Ct.App.1980), aff'd *Scott v. Rizzo*, 96 N.M. 682, 634 P.2d 1234 (1981), became final.

To the contrary, defendants' Answer Brief states:

In point XI, Ruiz asserts that if this case was subject to the comparative negligence doctrine there would be some factors the jury must decide in order to render a decision in this case. Ruiz, however, makes no claim that the comparative negligence doctrine applies to this case. *He cannot make such a claim because the doctrine of comparative negligence is not applicable to this case * * [R]eferring to cases on appeal, the [Claymore] court held that the comparative negligence doctrine would only apply to those cases "in which the issue [of comparative negligence] is preserved."* [Emphasis added.]

*Claymore* said:

Therefore, we hold that the rule herein adopted be applicable to the instant case and *all cases filed hereafter.* Further in those *appropriate* cases in which trial commences after the date on which this opinion becomes final, including those which may be remanded *for retrial for whatever reason,* comparative negligence shall be applicable. *And, finally, the new rule shall be applicable to any case presently pending in the appellate courts in which the issue is preserved.* [Emphasis added.]

*Claymore* was decided December 9, 1980. It became final after February 12, 1981 [*Scott v. Rizzo*, supra], and after mandate was issued. The skeleton transcript was filed in the clerk's office on September 3, 1980. Ruiz was "presently pending." The specific provision, which requires that "the issue is preserved," holds sway over the previous general provisions. What is meant by "in which the issue is preserved"?

This language is vague and uncertain in meaning. It is temporary in nature and applicable only to cases pending in this Court. When pending cases are finally resolved, this portion of the *Claymore* rule will end. Of course, pending cases affirmed will not be subject to the comparative negligence doctrine. Pending cases reversed and remanded for trial, not retrial, shall be governed by the comparative negligence doctrine "if the issue is preserved." Some determination must be made in this Court whether "the issue is preserved."

"Issue" is defined as " 'a single, certain and material point, deduced by the pleadings of the parties which is affirmed on one side and denied on the other.' *Black's Law Dictionary.*" *Morel v. Highline Construction Co.*, 339 So.2d 1324, 1325 (La.App.1976). In construing "issues before said board," *Daihl v. County Board of Appeals of Baltimore Co.*, 258 Md. 157, 265 A.2d 227, 229 (1970) the court said:

Issue connotes a matter which lends itself to a separate finding or separate holding that is, something which involves a separate point. Webster's New World Dictionary (College Edition) defines "issue" as: " * * * a point, matter or question to be disputed or decided * * *."

The "issues" in a case are made up by the pleadings. *Ribarin v. Kessler*, 78 Ohio App. 289, 70 N.E.2d 107 (1946). An "issue" is a statement of material fact in a pleading of one party which is denied in a pleading of the other party. If it is a proposition of fact, it is to be tried upon the evidence adduced. *Parliman v. Young*, 2 Dak. 175, 4 N.W. 139 (1879). *Hong Sling v. Scottish Union & Nat. Ins. Co.*, 7 Utah 441, 27 P. 170 (1891).

Comparative negligence is the "issue" in this pending case. It is our duty to resolve the issue. *Brown v. Keill*, 224 Kan. 195, 580 P.2d 867 (1978).

The meaning of the word "preserve" is that defined in Webster's International Dictionary as connoted. *Securities Investment Co. of St. Louis v. Donnelley*, 89 Nev. 341, 513 P.2d 1238, 1241–42 (1973) and cases cited. It states:

> The word "preserve" is susceptible to a broad range of connotations from maintaining something in its status quo to preventing its total destruction. *It implies the continuance of what previously existed.* In none of its uses does it connote creating something new or extending an existing thing or status. [Emphasis added.] [Id. 1241–42.]

The *Claymore* rule now reads:

> Comparative negligence shall be applicable to any case presently pending in the appellate courts in which the issue of comparative negligence, shall not be extended beyond February 12, 1981, but shall remain in its status quo. The rule that previously existed is in effect.

The *Claymore* rule is not applicable. What *Claymore* intended to say was: "in which the issue is *not* preserved," i.e., that the doctrine of comparative negligence as decided in *Claymore*, shall, in its present form, continue to be used until all pending cases have been decided and reversed. Until *Claymore* is amended, it is not applicable to pending cases. It cannot be amended by this Court. Certiorari was granted. In *Scott v. Rizzo, supra*, the Supreme Court said:

> It is the decision of this Court that we adopt in toto the opinion authored by Judge Walters of the Court of Appeals * * *.

Upon reversal comparative negligence is not applicable in the instant case.

E. *Summary judgment should be affirmed as to defendant M. D. Chavez.*

Ruiz claims that: (1) "Failure to Blow the Whistle and Ring the Bell Prior to Starting Forward Was the Proximate Cause of the Accident"; (2) "Failure To See Mr. Ruiz Prior To Movement Of The Train [was the] Violation Of The Duty To Keep A Lookout and Could Be Considered the Proximate cause of the accident" [this point is directed to J. D. Cooper, the engineer]; (3) "The Train Crew Failed Either To Look For Or To See Mr. Ruiz Before And During His Crossing Between The Cars And Were Thereby Negligent."

M. D. Chavez, trainmaster of A., T. & S. F., was, at the time of the accident, charged with the duty of supervising A., T. & S. F. employees in the Deming yard. He was not present in the Deming yard at the time of the accident and had no relationship with the factors that are alleged to have been the cause thereof. No conduct of M. D. Chavez contributed to nor participated in this accident. To argue that Chavez was in charge of making recommendations for yard safety; that possibly he was aware that pedestrians cross the railroad track and then conclude that "the role Mr. Chavez plays in supervision becomes critical in determining the cause of the accident in this case" does not approach a factual issue.

No authority is cited in support of plaintiff's position. In cases reviewed by this Court, points raised without authority in support thereof, should not receive serious consideration.

Summary judgment should be affirmed as to M. D. Chavez.

F. *Summary judgment should be affirmed in denial of plaintiff's claims for punitive damages.*

Plaintiff claims that the issue of wanton and reckless conduct on behalf of defendant railroads is an issue of fact. The purpose of this point is to grant plaintiff an opportunity to seek punitive damages. Count II of plaintiff's complaint excoriates the railroad companies with wanton and reckless conduct and alleges that the railroad companies should be assessed punitive damages. Plaintiff is mistaken in the relief sought.

Reliance is had primarily on Annot. *What conduct on part of railroad, in connection*

*with crossing accident, amounts to wantonness, wilfulness, or the like, precluding defense of contributory negligence,* 151 A.L.R. 9 (1944). This annotation and all cases which are cited, involve a rule already adopted in New Mexico, that contributory negligence will be denied as a defense where an act of negligence of a defendant shows a reckless, wilful and wanton disregard of human life and the consequences of his acts. *Galvan v. City of Albuquerque,* 85 N.M. 42, 508 P.2d 1339 (Ct.App.1973).

Denial of the defense of contributory negligence is not an issue in this appeal on punitive damages. Definitions of "wanton and reckless conduct" are a game in semantics, but it is a crucial issue on remand if plaintiff amends Count II. It is doubtful from the record now before this Court whether any such conduct of A., T. & S. F. Ry. Co. has been established by plaintiff. No such claim can be made against defendant Southern Pacific.

We are confronted with whether a railroad company can be assessed punitive damages by a jury. This issue first arose in *Denver & R. G. Ry. Co. v. Harris,* 3 N.M. (Gild) 114, 2 P. 369 (1884), aff'd 122 U.S. 597, 7 S.Ct. 1286, 30 L.Ed. 1146 (1887). *Harris* was discussed in *Cerrillos C. R. R. Co. v. Deserant,* 9 N.M. 49, 49 P. 807 (1897). The court also quoted from the case of *Lake Shore, etc., Ry. Co. v. Prentice,* 147 U.S. 101, 13 S.Ct. 261, 37 L.Ed. 97 (1893). The quotation is:

"To give exemplary damages there must have been some willful misconduct, or that entire want of care which would raise the presumption of a conscious indifference of consequences." [9 N.M. 68, 49 P. 807.]

*Stewart v. Potter,* 44 N.M. 460, 104 P.2d 736 (1940) expressed itself in favor of the rule observed in the leading case of *Lake Shore* :

"A principal * * * cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive, or malicious intent on the part of the agent." [Id. 466, 104 P.2d 736.]

Other quotations were to the effect that "such damages cannot be allowed, where the principal is prosecuted for the tortious act of his servant, unless there is proof in the cause to implicate the principal and make him *particeps criminis* of his agent's act. "No man should be punished for that of which he is not guilty"; that punitive damages are "indefensible in legal principal."

From *Lake Shore, Stewart* established this fundamental rule:

[T]he principal, or master, is liable for punitive or exemplary damages *only* in cases where he has authorized, participated in or ratified the acts of the agent. [Emphasis added.] [Id. 466, 104 P.2d 736.]

This rule remained steadfast. *Couillard v. Bank of New Mexico,* 89 N.M. 179, 548 P.2d 459 (Ct.App.1976); *Samedan Oil Corp. v. Neeld,* 91 N.M. 599, 577 P.2d 1245 (1978).

For at least 87 years, "[i]nsofar as we have been able to discover, the United States Supreme Court has not waivered on the concept of the punitive-damage award as a viable principle of federal common law." *Baptiste v. Superior Court for Cty., Etc.,* 106 Cal.App.3d 87, 164 Cal.Rptr. 789, 793 (1980); *Remeikis v. Boss & Phelps, Inc.,* 419 A.2d 986 (D.C.App.1980). Omitting citations, including *Lake Shore,* the *Remeikis* court said:

Moreover, since each of the defendants is a corporation, it must be shown that the wrongful act was authorized and ratified by the corporation, not merely perpetrated by an employee. *One way to establish that the corporation was involved is to show that an executive officer of high rank participated in the misconduct.* [Emphasis added.] [Id. 992.]

This concept exemplifies the rule in New Mexico. See *Couillard, supra.*

True, more "liberal" views have been suggested. See dissenting opinion in *Samedan Oil Corp., supra,* and elsewhere. *Recovery of Punitive Damages from Corporate Defendants for the Tortious Acts of Employees,* 10 Lincoln L.Rev. 207 (1977). "On the other hand, forceful arguments have been

made that the doctrine of punitive damages should be abolished." Mallor-Roberts, *Punitive Damages: Toward a Principled Approach*, 31 Hastings L.J. 639, 640 (1980). This article focuses the problem:

> Because of the danger of an excessive or inappropriate imposition of punitive damages, courts must supervise punitive damage awards closely to ensure that they are imposed only when justified. Yet the standards for imposing and assessing punitive damages remain frustratingly vague. Appellate records are replete with evidence that judges desparately want guidance on this issue. [Id. 642.]

For an overview of the history, philosophy, theory, purposes, restrictive and expansive views, vagary and disagreements of authors and courts, see, also Long, *Punitive Damages: An Unsettled Doctrine*, 25 Drake L.Rev. 870 (1976); Reisberg, *In Defense of Punitive Damages*, 55 N.Y.U.L.Rev. 303 (1980); Kramer & Schnebeck, *Punitive Damages in Idaho*, 17 Idaho L.Rev. 87 (1980); Morris, *Punitive Damages in Tort Cases*, 44 Harvard L.Rev. 1173 (1931). For the California rule which follows Restatement Torts § 909 (1939) see, *Hale v. Farmers Insurance Exchange*, 42 Cal.App.3d 681, 117 Cal.Rptr. 146 (1974). For additional railroad cases, see, *Warner v. Southern Pac. Co.*, 113 Cal. 105, 45 P. 187 (1896), which favored the railroad, and *McInerney v. United Railroads*, 50 Cal.App. 538, 195 P. 958 (1920) where liability was upheld.

The guidelines set by Restatement of Torts are found in § 908 (1939). These guidelines have generally been followed. See, *Harrell v. Ames*, 265 Or. 183, 508 P.2d 211 (1973); *Huggins v. Deinhard*, 127 Ariz. 358, 621 P.2d 45 (1980); *Linscott v. Rainier Nat. Life Ins. Co.*, 100 Idaho 854, 606 P.2d 958 (1980); Shepard's Restatement of the Law Citations 246 (1976), (1981).

New Mexico has long adopted its guidelines. Any change or modification thereof rests with the Supreme Court. Under our rules, not a scintilla of evidence exists to warrant submission of punitive damages to the jury. No genuine issue of this material fact is present. Denial of submission of punitive damages should be affirmed.

### G. *Defendants were under no duty to fence their railroad track.*

Plaintiff claims defendant railroads had a duty to fence their railroad tracks for various reasons. Reliance is had on *Hayes v. Michigan Central R. R. Co.*, 111 U.S. 228, 4 S.Ct. 369, 28 L.Ed. 410 (1884). In *Hayes* the ordinance involved provided that the railroad shall erect and maintain fences that would prevent animals from straying upon or obstructing its tracks "and secure persons and property from danger * * *." New Mexico's statute is limited to livestock. Section 77–16–16, N.M.S.A. 1978. It should be noted that absent a statute, it was not negligent for a railroad to fail to fence their tracks against livestock by any rule at common law. *Hittson v. Chicago, R. I. & P. Ry. Co.*, 43 N.M. 122, 86 P.2d 1037 (1939); *Railway Co. v. Cazier*, 13 N.M. 131, 79 P. 714 (1905).

In the absence of statute, there is no duty upon a railroad to fence its tracks or right of way for any purpose. Consequently, the failure to do so is not negligence as to persons who come upon the tracks at a point where there is no fence and are injured. *Kershaw Motor Co. v. Southern R. Co.*, 136 S.C. 377, 134 S.E. 377 (1926), 47 A.L.R. 858 (1927). This rule even applies to children who trespass. *Briney v. Illinois Cent. R. Co.*, 324 Ill.App. 375, 58 N.E.2d 286 (1944); *Carter v. Pennsylvania R. Co.*, 75 Ohio App. 156, 61 N.E.2d 230 (1944); *Malischewski v. Pennsylvania R. Co.*, 356 Pa. 554, 52 A.2d 215 (1947); *Lefler v. Pennsylvania R. R.*, 203 Misc. 887, 118 N.Y.S.2d 389 (1952).

### H. *Objections sustained to answers to interrogatories requested were not erroneous.*

Interrogatory # 13 pertained to studies made in connection with upgrading; # 14, studies in re effectiveness of warnings; # 15, in re complaints, orders, notices, comments regarding crossing; # 24, in re request to install warning devices or fences; # 26–59, in re punitive damages; # 74, in

re names and addresses of flagman, watchmen; # 75, in re names and addresses of persons having duties regarding crossings and approaches; # 78, in re names and addresses of persons given written or oral reprimand or warning; # 84, in re number of freight cars in use without end platform; and # 91, names and addresses of all employees fired since January 1, 1974.

Plaintiff cites no authority to support his position. None of the questions asked are pertinent to the issues in this case and discovery will not assist plaintiff.

Objections made by defendant railroad, stated "Objected to." In 1979, Rule 33 of the Rules of Civil Procedure was amended. One portion reads:

Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, *in which event the reasons for objections shall be stated in lieu of an answer.* [Emphasis added.]

This rule is mandatory and must be followed. Its purpose is clear. Prior to a hearing before the court, the opposing party will have knowledge of the reasons for objection and can adequately prepare to meet the challenge. The court will also have knowledge of the reasons given. At the hearing, surprise and speculation will end and a ruling may easily be determined. *Lackey v. Mesa Petroleum Co.,* 90 N.M. 65, 559 P.2d 1192 (Ct.App. 1976).

Plaintiff not having raised this matter in the district court, it is waived.

Objections sustained as to interrogatories submitted were not erroneous.

Summary judgment should be affirmed.