2007-NMCA-003

151 P.3d 903

**Melanie HEATH, individually, and as next friend of Holdyn Heath, a minor, Plaintiff–Appellant,**

v.

**LA MARIANA APARTMENTS and Gerald Deabel, Defendants– Appellees.**

No. 24,991.

Court of Appeals of New Mexico.

Nov. 2, 2006.

Certiorari Granted, No. 30,129, Jan. 2, 2007.

Martin, Lutz, Roggow, Hosford & Eubanks, P.C., David P. Lutz, William L. Lutz, Stephen E. Hosford, Robert W. Ikard, P.A., Robert W. Ikard, Las Cruces, NM, for Appellant.

Cervantes Moberly, P.C., Joseph Cervantes, Las Cruces, NM, for Appellees.

**OPINION**

ROBINSON, Judge.

{1} Melanie Heath's (Plaintiff) three-year-old son sustained injuries after he fell through a space in the guardrail protecting the second-story balcony in front of the entrance to Plaintiff's apartment. Plaintiff subsequently filed this action against her landlord, as next friend for her son and on her own behalf, alleging various torts. Following a jury trial, Plaintiff appeals from the district court's order directing a verdict on her claim for negligence per se and the jury's verdict finding for Defendant on the remaining issue

of negligence. On appeal, Plaintiff asserts the following three errors: (1) the trial court erroneously concluded that the Uniform Building Code (UBC) provisions, relied upon by Plaintiff, did not support a claim for negligence per se; (2) the trial court abused its discretion by excluding evidence of building code violations at La Mariana Apartments (the Apartments) unrelated to the guardrail space through which Plaintiff's son fell; and (3) the submitted UJI 13–302 improperly permitted Plaintiff's negligence to be imputed to her son and invoked contributory negligence. For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

{2} The underlying facts of this case are not in dispute. The Apartments were constructed in 1982, and purchased by Gerald Deabel (Defendant) in 1994. The 1979 UBC, as adopted by ordinance of the City of Las Cruces, governed the design and construction of the Apartments. At that time, UBC provisions, governing guardrail construction, required that vertical posts within a guardrail, or any ornamental pattern serving the same barrier-creating function, be designed so that a nine-inch sphere could not be passed through any space within the overall guardrail design. 1979 U.B.C. § 1716.

{3} Since 1979, Section 1716 of the UBC has been amended twice. In 1983, the maximum allowable space within a guardrail design was reduced to six inches; in 1986, it was further reduced to four inches. These amendments were made in order to reduce the danger posed to children, who were small enough to fit through the prior allowable spaces, or whose heads could become caught in such spaces.

{4} On the evening of July 28, 2001, Plaintiff was standing with her son on the balcony in front of her apartment at La Mariana Apartments, visiting with two neighbors, who were present in the parking lot below. Plaintiff's phone rang. After Plaintiff went inside to answer the phone, her son, who had been playing and swinging on the balcony guardrail, fell head-first through an eight and three-quarters inch space between a wooden roof support column and the first vertical

post of the balcony guardrail, striking the pavement below. Her son suffered a skull fracture, and Plaintiff also alleged that he developed post-traumatic epilepsy as a result of the impact.

## II. NEGLIGENCE PER SE

{5} Plaintiff argues that the trial court erred in dismissing her claim for negligence per se, and submits that provisions of the UBC, relating to the continued use and occupancy of buildings in existence at the time new versions of the UBC are promulgated, created an absolute duty on the part of Defendant to abate any hazard posed by the guardrail space through which her son fell. We disagree, and hold that the trial court correctly ruled that the 1997 UBC provisions, relied on by Plaintiff, did not set out a sufficiently specific duty to warrant submission of a negligence per se instruction to the jury.

{6} "A directed verdict is appropriate only when there are no true issues of fact to be presented to a jury." *Sunwest Bank of Clovis v. Garrett*, 113 N.M. 112, 115, 823 P.2d 912, 915 (1992). Whether the UBC provisions relied upon by Plaintiff may serve as the basis of a claim for negligence per se is a question of law which we review de novo. *See Apodaca v. AAA Gas Co.*, 2003–NMCA–085, ¶ 43, 134 N.M. 77, 73 P.3d 215; *see also Acosta v. City of Santa Fe*, 2000–NMCA–092, ¶ 16, 129 N.M. 632, 11 P.3d 596 (noting that interpreting an ordinance to determine existence of legal duty is a question of law).

{7} In determining whether a negligence per se instruction is appropriate, we apply the following four-part test adopted by our Supreme Court in *Archibeque v. Homrich*, 88 N.M. 527, 532, 543 P.2d 820, 825 (1975):

(1) [T]here must be a statute which prescribes certain actions or defines a standard of conduct, either explicitly or implicitly[;] (2) the defendant must violate the statute[;] (3) the plaintiff must be in the class of persons sought to be protected by the statute[;] and (4) the harm or injury to the plaintiff must generally be of the type

the legislature through the statute sought to prevent. *Id.*

{8} Regarding the first factor, this Court has acknowledged that "[t]here is substantial authority for the proposition that a negligence-per-se instruction is appropriate only if the statute or regulation defines the duty with specificity." *Abeita v. N. Rio Arriba Elec. Coop.*, 1997–NMCA–097, ¶ 21, 124 N.M. 97, 946 P.2d 1108. To further explain this principle, we adopted the following language from *Swoboda v. Brown*, 129 Ohio St. 512, 196 N.E. 274, 278–79 (1935):

> Where a specific requirement is made by statute and an absolute duty thereby imposed, no inquiry is to be made whether the defendant acted as a reasonably prudent man, or was in the exercise of ordinary care.... But, where duties are undefined, or defined only in abstract or general terms, leaving to the jury the ascertainment and determination of reasonableness and correctness of acts and conduct under the proven conditions and circumstances, the phrase "negligence per se" has no application.

{9} With these principles in mind, we turn to the successive UBC provisions relied upon by Plaintiff in support of her argument that a charge of negligence per se should have been submitted to the jury. Plaintiff argues that provisions of the 1997 UBC, permitting the continued use and occupancy of existing buildings except where such use and occupancy is "dangerous to human life," created an absolute duty on the part of Defendant to abate the hazard posed by the eight and three-quarters inch space between a roof support post and the first vertical post of the guardrail, protecting the second-floor balcony in front of Plaintiff's apartment entrance. 1997 U.B.C. § 102 We disagree, and hold that the trial court correctly concluded that the UBC provisions cited by Plaintiff neither establish an absolute duty of repair with regard to any hazard posed by the guardrail space, nor justify departure from the established standard of ordinary care that requires all landlords to maintain the common areas of their properties in a reasonably safe condition.

{10} As the basis for her claim of negligence per se, Plaintiff cites several provisions of the 1997 UBC. First, Plaintiff points to Section 102, which provides:

> All buildings or structures regulated by this code that are structurally unsafe or not provided with adequate egress, or that constitute a fire hazard, or are otherwise dangerous to human life are, for the purpose of this section, unsafe....

> All such unsafe buildings, structures or appendages are hereby declared to be public nuisances and shall be abated by repair, rehabilitation, demolition or removal in accordance with the procedures set forth in the Dangerous Buildings Code or such alternate procedures as may have been or as may be adopted by this jurisdiction.

{11} Plaintiff next cites to the 1997 UBC Section 3402: "[t]he owner or ... designated agent shall be responsible for the maintenance of buildings and structures." Lastly, Plaintiff submits that the reduced, four-inch guardrail space limitation found in Section 509.3 of the 1997 UBC provides a "precise, measurable standard" to which Defendant was required to conform. At trial, Plaintiff elicited testimony from experts on both sides, establishing that the eight and three-quarters inch guardrail space, through which her son fell, was a condition dangerous to life. Construing these provisions together, and relying on that expert testimony, Plaintiff argued below that because the space in the guardrail was "dangerous to human life," for example, small children, Sections 102 and 3402 triggered an "absolute duty of repair" on the part of Defendant which "had to conform to the specific, verifiable 4–inch standard under the UBC."

{12} According to Plaintiff's argument, any safety-related amendments to the UBC would create an absolute duty on the part of landlords to ensure continuing compliance with those amendments. We see nothing in the UBC, however, indicating an intent to impose such a broad and absolute duty on landlords. Instead, we find several provisions that counsel against accepting Plaintiff's argument that the UBC imposes an absolute duty of compliance with amend-

ments made subsequent to a building's construction.

{13} Chapter 34 of the 1997 UBC governed existing structures at the time of Plaintiff's son's fall. Section 3402 of that chapter provides that "[a]ll devices or safeguards required by this code shall be maintained in conformance with the *code edition under which installed.*" U.B.C. § 3402 (emphasis added). Section 3403.2 similarly indicates the lack of a duty to retrofit existing structures. "Additions, alterations or repairs may be made to any building or structure *without requiring the existing building or structure to comply with all the requirements of this code,* provided the addition, alteration or repair conforms to that required for a new building or structure." U.B.C. § 3403.2 Section 3401, relied on in part by Plaintiff, provides that "[b]uildings in existence at the time of the adoption of this code may have their existing use or occupancy continued, if such use or occupancy was legal at the time of the adoption of this code, provided such continued use is not dangerous to life." We see nothing in these provisions requiring, or even suggesting, that Defendant was responsible for ensuring compliance of the Apartments with UBC amendments made (1) subsequent to the apartment's construction, but prior to Defendant's purchase of the property, or (2) after Defendant purchased the apartments in 1994.

{14} As further support for our analysis, we note that the UBC does not specifically identify what conditions may, or may not, render a building unsafe or dangerous to life. While it alludes to general examples, such as a lack of sufficient egress, structural instability, or the presence of a fire hazard, it appears that the determination of whether a building is unsafe, or otherwise dangerous to life, is left to the authority of building inspectors charged with enforcement of the UBC's specific technical and structural requirements. *See* 1997 U.B.C. § 3402 ("To determine compliance with this subsection, the building official may cause a structure to be reinspected."). We specifically note the absence of any language, identifying guardrails that do not comply with the current, four-inch standard found in Section 509.3 of the 1997 UBC as rendering a structure unsafe, or dangerous to life. We, therefore, conclude that the UBC lacks the requisite level of specificity to justify the submission of a negligence per se instruction to the jury.

{15} Lastly, we note that Plaintiff's argument would bring the UBC in direct conflict with New Mexico's established standard of ordinary care, requiring Defendant, as a landlord, to "maintain the common areas of his property in a reasonably safe condition." *Calkins v. Cox Estates,* 110 N.M. 59, 64, 792 P.2d 36, 41 (1990); *see* NMSA 1978, § 47–8–20(A)(3) (1999) (requiring landlords to maintain common areas in a "reasonably safe condition"); Rule 13–1315 NMRA (instructing that a landlord is bound by the standard of ordinary care). Our Supreme Court has explicitly rejected attempts to impose an absolute duty upon landlords to provide common areas that are absolutely free of any hazards, whether latent or apparent. "A landlord is not obligated to provide a tenant with a premises completely free of defects. As a matter of fairness, the law does not make landlords guarantors of the safety of their tenants or visitors. Rather, a landlord is bound by the standard of ordinary care[.]" *Gourdi v. Berkelo,* 1996–NMSC–076, ¶ 8, 122 N.M. 675, 930 P.2d 812 (citations omitted).

{16} In this case, we see no reason to supplant this established standard of ordinary care with a standard that renders landlords strictly liable (notwithstanding issues of causation) for any injury suffered by a tenant that might have been prevented by bringing an existing structure into compliance with amendments to the UBC. *Cf. Sims v. Sims,* 1996–NMSC–078, ¶ 22, 122 N.M. 618, 930 P.2d 153 (stating that statutes "will be interpreted as supplanting the common law only if there is an explicit indication that the legislature so intended"). In the absence of clear legislative or municipal imposition of a duty to repair existing conditions rendered obsolete by later amendments to the UBC, we think ordinary negligence principles remain the best measure of a landlord's civil liability for tenant injury. Accordingly, we conclude that the trial court was correct in granting Defendant's motion for judgment as a matter

of law and dismissing Plaintiff's claim for negligence per se.

## III. EXCLUSION OF OTHER CODE VIOLATIONS

{17} Plaintiff contends that the trial court erroneously excluded evidence of other 1979 UBC violations observed by Plaintiff's architectural expert at the Apartments. The other violations related to the fire-rating of certain windows, the number of balcony exits, the measurements of posts in stairway guardrails, corridor lengths, and the height of doorway thresholds. Plaintiff argues that the additional violations, though unrelated to the guardrail space through which her son fell, were relevant to the issue of constructive notice to Defendant that the Apartments were in need of repair or rehabilitation.

{18} We review the admission, or exclusion, of evidence for abuse of discretion. *Coates v. Wal–Mart Stores, Inc.,* 1999–NMSC–013, ¶ 36, 127 N.M. 47, 976 P.2d 999. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case" is "clearly untenable or is not justified by reason." *State v. Stanley,* 2001–NMSC–037, ¶ 5, 131 N.M. 368, 37 P.3d 85 (internal quotation marks and citation omitted).

{19} There was no error in the exclusion of this evidence. Plaintiff's reliance on *Ruiz v. Southern Pacific Transportation Company,* 97 N.M. 194, 638 P.2d 406 (Ct.App.1981) is misplaced. In that case, the defendant was ordered to respond to discovery requests regarding other accidents similar in nature to the one suffered by the plaintiff in that case, in order to demonstrate the defendant's notice and knowledge of conditions likely to result in further accidents. *Id.* at 202, 638 P.2d at 414. In so holding, this Court stated:

> Evidence of the happening of accidents at other places is ordinarily not admissible to show whether the danger of such an accident exists at the place in question. If, however, such evidence would have the tendency to make the existence of defendants' allegedly negligent omissions in this case, after notice and knowledge of danger,

more or less probable, the evidence is relevant and admissible.

*Id.*

{20} Here, Plaintiff did not seek to introduce evidence of other accidents which might have put Defendant on notice of the danger posed by the guardrail through which her son fell. Had other children fallen through guardrail spaces during the period of Defendant's ownership, then the principles underlying our holding in *Ruiz* might have some applicability here. In contrast, Plaintiff argues that the mere existence of other code violations at the apartments is "probative of Defendant's knowledge, or lack thereof, of the state of the property and his legal obligations with respect to repair." The other violations, however, have no tendency to make more, or less, probable Defendant's awareness of any danger posed by, or any duties relating to, the specific hazard at issue in this case. *See* Rule 11–401 NMRA (defining relevance). Being irrelevant, the other violations were properly excluded by the trial court. Rule 11–402 NMRA (irrelevant evidence inadmissible).

## IV. JURY INSTRUCTIONS

{21} The final point of error raised by Plaintiff challenges UJI 13–302 submitted to the jury. Plaintiff asserts three errors regarding this instruction: (1) that by including Defendant's affirmative defense based on Plaintiff's negligence, the instruction improperly permitted her negligence to be imputed to her son; (2) that the instruction improperly invoked contributory negligence; and (3) that the instruction was vague because it failed to adequately instruct the jury on principles of comparative fault. We hold that the trial court correctly permitted Defendant to assert an affirmative defense based on the negligence of Plaintiff, and that she failed to preserve the other arguments she now raises on appeal.

{22} The question of whether the jury was properly instructed with regard to Defendant's affirmative defense based upon Plaintiff's negligence is a mixed question of law and fact subject to de novo review. *State v. Gaitan,* 2002–NMSC–007, ¶ 10, 131 N.M. 758, 42 P.3d 1207. "A jury instruction is

proper, and nothing more is required, if it fairly and accurately presents the law." *State v. Laney*, 2003–NMCA–144, ¶ 38, 134 N.M. 648, 81 P.3d 591.

{23} Plaintiff and Defendant each tendered UJI 13–302 and special verdict forms. In addition to stating a denial of Plaintiff's claim that he was negligent, Defendant's UJI 13–302 included a statement of an affirmative defense based upon Plaintiff's negligent supervision of her son, and Defendant's special verdict form permitted the jury to apportion fault between Plaintiff and Defendant. In contrast, Plaintiff's tendered UJI 13–302 did not include any statement of Defendant's affirmative defense, and the special verdict form tendered by Plaintiff also only permitted the jury to assign causation and, therefore, liability for damages to Defendant alone.

▓ {24} We first address issues relating to preservation of Plaintiff's challenges to the submitted instructions. At trial, Plaintiff's counsel objected to the inclusion of any affirmative defense based on her negligence, arguing that "by allowing the jury to compare the negligence of [Plaintiff] . . ., the Court is attributing her negligence to the child . . . improperly, so for that reason[,] we object to Instruction Number 3 and to the form of verdict." Plaintiff then requested that the trial court accept Plaintiff's tendered instruction and special verdict form, which limited the jury's consideration only to the question of Defendant's negligence and made no provision for comparing fault between Defendant and Plaintiff.

{25} The trial court concluded that Defendant's affirmative defense was supported by the evidence, and that case law and public policy of New Mexico mandated the use of instructions permitting the jury to compare the negligence of Plaintiff with that of Defendant. Plaintiff made no further objections, except to again state that "it was the public policy of New Mexico not to impute negligence."

▓ {26} It is clear from the record that Plaintiff objected to any comparison of her negligence with respect to her son's claims. The record does not indicate, however, that Plaintiff raised any of the other objections that she now advances on appeal, which go to the form of Defendant's instruction. "The tender but refusal of an instruction is generally sufficient to preserve error. However, where one instruction is given rather than another, the party must draw the court's attention to the specific defect in the given instruction to preserve it for appellate review." *Apodaca*, 2003–NMCA–085, ¶ 40, 134 N.M. 77, 73 P.3d 215 (citations omitted); *see Lewis v. Rodriguez*, 107 N.M. 430, 435, 759 P.2d 1012, 1017 (Ct.App.1988). It was incumbent upon Plaintiff, after the trial court rejected her argument equating the imputation of negligence with the comparison of negligence, to raise any additional challenges to the form and language of UJI 13–302 as submitted. "To preserve an issue for appellate review, the objection must be specific enough to alert the district court to the particular vice in the defective instruction." *Andrus v. Gas Co.*, 110 N.M. 593, 597, 798 P.2d 194, 198 (Ct.App.1990). This situation is distinct from one in which the trial court refuses to instruct on a particular issue. In those cases, the tendering of a correct instruction will adequately preserve the issue for appeal. *See id.* Here, Plaintiff advanced a general challenge to any comparison of fault between Defendant and Plaintiff, but did not alert the trial judge to any specific defects in UJI 13–302 thereafter. *See Budagher v. Amrep Corp.*, 97 N.M. 116, 119, 637 P.2d 547, 550 (1981) (holding that a "mere assertion that the given instruction is not an accurate statement of the law is insufficient to alert the mind of the trial judge to the claimed vice of the instruction"). We, therefore, limit our review to the question of whether it was proper to permit the comparison of fault between Defendant and Plaintiff in determining the amount that Defendant would pay as damages on Plaintiff's son's claims.

▓ {27} Plaintiff contends that the submission of UJI 13–302, including Defendant's affirmative defense based upon Plaintiff's negligence, "violated the principle that the negligence of the parent cannot be imputed to the child to bar recovery." In support of her argument, Plaintiff cites to the case of *Montoya v. Winchell*, 69 N.M. 177, 364 P.2d

1041 (1961), which, despite having been decided under contributory negligence, remains in the annotations to UJI 13–1610, which currently states: "If you find that the parent was negligent, any such negligence shall not be attributed to the child." Prior to New Mexico's abolishment of contributory negligence and joint and several liability, the rule read as follows: "If you find that the parents of the child were negligent such negligence does not prevent a recovery by the child, if the child is otherwise entitled to recover." UJI Civ. 12.8 NMRA (1979). Plaintiff argues that this rule, though developed solely as an exception to contributory negligence, continues to prohibit the comparison of parental negligence with respect to a child's claims against a defendant.

{28} In our view, at least in the context of a pure comparative fault system, the rule, prohibiting the imputation of parental negligence, is simply an atavistic holdover from the era of contributory negligence. The rule's future obsolescence was anticipated by our Supreme Court when it stated in *Scott v. Rizzo* that "[u]nder comparative negligence, rules designed to ameliorate the harshness of the contributory negligence rule are no longer needed." 96 N.M. 682, 687, 634 P.2d 1234, 1239 (1981) (abolishing "last clear chance" rule and the distinction between ordinary and gross negligence); *cf. Dunleavy v. Miller*, 116 N.M. 353, 354, 862 P.2d 1212, 1212 (1993) (abolishing doctrine of sudden emergency because of its incompatibility with principles of comparative negligence); *Klopp v. Wackenhut Corp.*, 113 N.M. 153, 159, 824 P.2d 293, 299 (1992) (holding "open and obvious danger" rule to be inconsistent with pure comparative negligence system). Because "[c]omparative negligence has freed us from artificial doctrines of the past, such as contributory negligence as a total defense," rules designed to counteract the unjust consequences of those doctrines are unnecessary and inapplicable in a comparative fault system. *Yount v. Johnson*, 1996–NMCA–046, ¶¶ 4–5, 121 N.M. 585, 915 P.2d 341 (discussing departure from "judicially declared immunity or protectionism, whether of a special class, group or activity," toward a pure comparative fault system under which "every person has a duty to exercise ordinary care

for the safety of others" (internal quotation marks and citations omitted)).

{29} The rule at issue here—that a parent's negligence may not be imputed to a child to bar recovery—was developed solely "as [a] judicial escape mechanism[ ] to avoid the sometimes harsh results of contributory negligence, which operated to deny plaintiffs any recovery even if they were only minimally at fault for their injuries." *Berlangieri v. Running Elk Corp.*, 2003–NMSC–024, ¶ 23, 134 N.M. 341, 76 P.3d 1098. For example, it permitted a child to fully recover from a negligent defendant despite any contributory negligence on the part of the child's parent(s), making defendant jointly and severally liable for the child's injuries. Put simply, the rule elevated concerns about fairness to child victims of negligence above concerns about fairness to defendants. In contrast, "[o]ur system of pure comparative negligence is based on fairness to both plaintiffs *and defendants*." *Andrews v. Saylor*, 2003–NMCA–132, ¶ 26, 134 N.M. 545, 80 P.3d 482 (declining to create a legal malpractice exception to comparative fault); *see also Y.H. Invs., Inc. v. Godales*, 690 So.2d 1273, 1278 (Fla.1997) (holding that comparison of fault between parent and the defendant, based on parent's negligent supervision of child who fell through a stairway guardrail, was appropriate under Florida's comparative negligence statute, and drawing distinction between "imputed" contributory negligence and modern policy mandating comparison of injury-causing fault).

{30} Because New Mexico's adoption of pure comparative negligence is centered on the policy that "each individual tortfeasor should be held responsible only for his or her percentage of the harm," we hold that Defendant was entitled to assert an affirmative defense based upon the negligence of Plaintiff and to have her negligence compared in determining any amount that Defendant would pay as damages. *Reichert v. Atler*, 117 N.M. 623, 625, 875 P.2d 379, 381 (1994); *see also* NMSA 1978, § 41–3A–1(B) (1987) (stating that "any defendant who establishes that the fault of another is a proximate cause of a plaintiff's injury shall be liable only for that portion of the total dollar amount award-

ed as damages to the plaintiff that is equal to the ratio of such defendant's fault to the total fault attributed to all persons, including plaintiffs, defendants and persons not party to the action"); *see generally Bartlett v. N.M. Welding Supply, Inc.,* 98 N.M. 152, 159, 646 P.2d 579, 586 (Ct.App.1982) (abolishing joint and several liability). We, therefore, conclude that the submission of UJI 13–302 properly reflected general principles of comparative negligence and accurately stated the law applicable to this case.

{31} As a final note, we recognize that the rule forbidding the imputation of parental negligence retains vitality in other contexts. *See, e.g., Rider v. Albuquerque Pub. Schs.,* 1996–NMCA–090, ¶¶ 14–15, 122 N.M. 237, 923 P.2d 604 (holding that negligent failure of custodian to file notice of the child's claim under Tort Claims Act did not foreclose the child from filing suit); *Jaramillo v. Bd. of Regents of Univ. of N.M.,* 2001–NMCA–024, ¶ 1, 130 N.M. 256, 23 P.3d 931 (applying same rule to excuse the child's failure to meet statute of limitations period). In these cases, parental negligence was not a proximate cause of the injury itself. Accordingly, we limit the applicability of this holding to cases in which a defendant asserts an affirmative defense, supported by the evidence, based on the negligent failure of a parent to prevent harm to his or her child.

## V. CONCLUSION

{32} For the foregoing reasons, we affirm the order of the trial court dismissing Plaintiff's claim for negligence per se and the jury verdict finding for Defendant on Plaintiff's claims for negligence, intentional infliction of emotional distress, and loss of consortium.

{33} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and RODERICK T. KENNEDY, Judges.