**Certiorari Granted, August 5, 2011, Docket No. 33,083**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-082**

**Filing Date: June 1, 2011**

**Docket No.  28,661**

**ESTELLA MARTINEZ and LILA
SALAZAR, individually and as
Co-Personal Representatives of the
ESTATE OF NATALIE MARTINEZ
ESPINOZA; ISAAC MARTINEZ and
ESTELLA MARTINEZ, individually
and as Co-Personal Representatives of
the ESTATE OF AMELIA D. MARTINEZ;
LILA SALAZAR and DONNA SALAZAR,
as Co-Personal Representatives of the
ESTATE OF DONALD D. ESPINOZA;
TONY ESPINOZA and EDNA ESPINOZA;
and ANTHONY MARK ESPINOZA,
individually,**

       **Plaintiffs-Appellants,**

**v.**

**NEW MEXICO DEPARTMENT
OF TRANSPORTATION,**

       **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY
Timothy L. Garcia, District Judge**

Hemphill & Grace, P.C.
Linda G. Hemphill
Paul W. Grace
Santa Fe, NM

The Okon Law Firm
Christa M. Okon

1

Santa Fe, NM

for Appellants

Cuddy & McCarthy, LLP
M. Karen Kilgore
Evelyn A. Peyton
Santa Fe, NM

for Appellee

## OPINION

**KENNEDY, Judge.**

{1}     This case stems from a head-on collision between a vehicle driven by Amelia Martinez, in which Donald Espinoza was a passenger, and another vehicle driven by Anthony Griego. All involved died. Plaintiffs, representatives of Martinez's and Espinoza's estates, pursue wrongful death and loss of consortium claims against the New Mexico Department of Transportation (DOT) for negligent failure to maintain the road. The district court granted DOT partial summary judgment on the grounds that DOT's alleged failure to install a concrete barrier separating traffic constituted a design issue, which insulates DOT from liability under the New Mexico Tort Claims Act (Act), NMSA 1978, Sections 41-4-1 to -30 (1976, as amended through 2010). At trial, the jury found for DOT on the remaining claims, and Plaintiffs now appeal. Plaintiffs argue the district court erred by (1) granting partial summary judgment to DOT on the issue of design immunity, (2) excluding evidence relating to DOT's duty to sweep gravel, (3) admitting Espinoza's toxicology report and drug paraphernalia, (4) admitting testimony of DOT's expert witness, and (5) providing inaccurate jury instructions. Additionally, Plaintiffs request that this Court should provide guidance on whether the grandparents are permitted to bring a loss of consortium claim for an unborn grandchild. We affirm all of the district court's decisions on these issues and decline to advise whether the grandparents are permitted to bring a loss of consortium claim for an unborn grandchild.

## I.     BACKGROUND AND PROCEDURAL HISTORY

{2}     On December 9, 2004, Griego drove eastbound on NM 502 in Santa Fe County, using the center turn lane to pass another driver. Around mile marker nine, Griego lost control and collided with the vehicle occupied by Martinez and Espinoza. Griego was intoxicated and driving above the speed limit. Griego, Martinez, and Espinoza died. Martinez's and Espinoza's approximately eight-month-old fetus also died. Sheriff's deputies determined that Martinez was not at fault for the accident. Plaintiffs and DOT do not dispute this fact.

2

**{3}** Plaintiffs are the parents of Martinez and Espinoza and paternal grandparents of their unborn grandchild. As representatives of Martinez's and Espinoza's estates, Plaintiffs pursue wrongful death and loss of consortium claims against DOT. Plaintiffs also bring a loss of consortium claim for their unborn grandchild.

**{4}** At trial, Plaintiffs argued that DOT's negligent failure to sweep away crushed red cinder from the center turn lane in part caused Griego to skid into oncoming traffic and collide into Martinez and Espinoza's vehicle. Plaintiffs also argued that DOT had a duty to erect a concrete barrier separating eastbound and westbound traffic. Plaintiffs asserted that DOT's duty arose from notice of NM 502's dangerous condition. Plaintiffs contended that DOT had notice of (1) previous fatal accidents occurring on NM 502, (2) newspaper articles discussing the dangerousness of the road, and (3) two citizens' complaints made to DOT regarding the dangers of NM 502. Plaintiffs argued that if DOT had heeded these notices of problems with the road's design and exercised its duty to erect concrete barriers, Griego would not have crossed the center turn lane and struck and killed Martinez and Espinoza.

**{5}** The court granted partial summary judgment to DOT on this issue prior to trial and explained its decision on the record. The district court held that the erection of barriers in this case was a matter of road design and within the scope of preserved state immunity under the Act. Section 41-4-11(B)(1)-(2). In reaching its conclusion, the district court acknowledged that defects in the road design, if known to DOT as a cause of accidents, could give rise to a duty on the part of DOT to change the design to make the road safer. The district court stated that it had considered the prior accidents cited by Plaintiffs on that road, and they did not sufficiently demonstrate that road conditions resulting from the road's design, absent other factors involved in those previous incidents, were similar to decedents' accident. The district court stated that absent an ability to make such a showing, Plaintiffs could not demonstrate that DOT was on notice of the danger of such accidents occurring as a result of the road's design. Plaintiffs could not show that DOT had notice of an ongoing defect of design in that part of the road, so as to give rise to a duty on DOT's part to correct it. To the extent that Plaintiffs failed to establish that there was a hazardous road design that gave rise to a duty to correct it, the district court concluded that it would not be proper to waive sovereign immunity for Plaintiffs' allegation that the design of the road contributed to the conditions causing the accident in this case. On appeal, Plaintiffs contend that the district court improperly granted partial summary judgment on the issue of DOT's duty to erect concrete barriers.

**{6}** After granting partial summary judgment to DOT on the issue of road design, the district court excluded other evidence that Plaintiffs argue demonstrated DOT's liability for failure to sweep away gravel in the center turn lane. Plaintiffs' evidence included facts relating to prior fatal accidents that occurred in the vicinity of the decedents' accident: (1) newspaper articles describing these prior accidents and the dangerousness of NM 502, (2) testimony by two citizens who expressed concern to DOT regarding the alleged unsafe conditions of NM 502, (3) testimony by Plaintiffs' expert that center turn lane barriers could have prevented the deaths of Espinoza and Martinez, and (4) other information pertaining to the configuration of NM 502. Apart from testimony by one citizen that related to an observation of gravel build-up, the district court excluded all of the evidence on the basis

3

that it was unrelated to DOT's duty to sweep away gravel. Left to decide whether DOT negligently failed to sweep away crushed cinders in the center turn lane, the jury found for DOT. On appeal, Plaintiffs argue that the district court abused its discretion in excluding this evidence.

{7}     Plaintiffs also contest the district court's admission of a bag belonging to Espinoza, containing cash, a gun, a crack pipe, and various prescription and non-prescription drugs discovered in Martinez's vehicle, as well as the results from an autopsy report indicating that Espinoza tested positive for drugs. The district court admitted the contents of the bag and toxicology report on the basis that it went to the issue of damages. Plaintiffs argue that the admission of this evidence was extremely prejudicial, and the district court abused its discretion in admitting it.

{8}     Next, Plaintiffs appeal the district court's decision to permit the testimony of DOT's expert witness, Dr. Stephen Pike, who testified to Griego's degree of intoxication. Plaintiffs allege that DOT's untimely identification of Dr. Pike as a witness should have precluded his testimony, and the district court abused its discretion in admitting it.

{9}     Plaintiffs also appeal the district court's jury instructions. Plaintiffs argue that the district court improperly denied them the right to submit two additional jury instructions. Lastly, Plaintiffs assert that this Court should give guidance regarding a grandparent's ability to bring a loss of consortium claim for an unborn grandchild. We first address DOT's immunity under the Act and then concern ourselves with the remaining issues that arose at trial.

## II.     DISCUSSION

### A.     Immunity

{10}     Plaintiffs argue that DOT negligently failed to maintain NM 502 and is not immune from liability under Section 41-4-11(B)(1) and (2). Whether immunity bars Plaintiffs' suit for DOT's alleged failure to erect concrete barriers is a question of law, which we review de novo. *Rutherford v. Chaves Cnty.*, 2003-NMSC-010, ¶ 8, 133 N.M. 756, 69 P.3d 1199. Summary judgment is proper if material facts are undisputed, and the movant is entitled to judgment as a matter of law. *See* Rule 1-056(C) NMRA; *Bierner v. City of Truth or Consequences*, 2004-NMCA-093, ¶ 8, 136 N.M. 197, 96 P.3d 322. In interpreting the meaning of a statute, we seek to effectuate legislative intent. *Rutherford*, 2003-NMSC-010, ¶ 11; *California First Bank v. State Dep't of Alcohol Beverage Control*, 111 N.M. 64, 68, 801 P.2d 646, 650 (1990). Statutory provisions that waive governmental immunity are strictly construed. *Rutherford*, 2003-NMSC-010, ¶ 11; *Armijo v. Dep't of Health & Env't*, 108 N.M. 616, 618, 775 P.2d 1333, 1335 (Ct. App. 1989).

{11}     Section 41-4-11(B)(1) and (2) preserves state immunity against suits for injuries caused by "a defect in plan or design of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area" or by the state's "failure to construct or reconstruct any bridge, culvert, [or] roadway[.]" Section 41-4-11(A) waives state immunity against suit for injuries

caused by "the negligence of public employees while acting within the scope of their duties during the construction, and in subsequent maintenance of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area." The legislative purpose of Section 41-4-11 is to ensure highways are kept safe for the public's use. *See Rutherford*, 2003-NMSC-010, ¶ 11; *see Fireman's Fund Ins. Co. v. Tucker*, 95 N.M. 56, 59, 618 P.2d 894, 897 (Ct. App. 1980) ("[T]he New Mexico Legislature intended to protect the general public from injury by imposing liability upon governmental agencies when they fail to maintain safe public highways."). We have previously recognized a city's immunity from a suit resulting from its alleged failure to make structural changes to a roadway in *Villanueva v. City of Tucumcari*, 1998-NMCA-138, ¶ 7, 125 N.M. 762, 965 P.2d 346 ("We need not decide whether the City had a duty to install [wheelchair] ramps. . . . [T]he . . . Act immunized the City from liability for breach of any such duty."). In *Villanueva*, we reaffirmed that "*maintenance*" of a road involves "upkeep and repair[,]" and our view that installations of structural elements are matters for which design immunity is conferred. *Id.* ¶ 8 (internal quotation marks and citation omitted). In carrying out the legislative objective of the Act, it has been well established that installing and maintaining traffic controls constitute maintenance activities under the Act. *Rutherford*, 2003-NMSC-010, ¶ 9.

**{12}** Plaintiffs argue that "design flaws become 'maintenance' obligations after repeated notice to DOT," stating that their claim originates in a design flaw inherent to NM 502. In framing their argument, they characterize the placement of "solid traffic[-]control median barriers" in the center turn lane as performance of a "maintenance" function and the barriers themselves as "traffic[-]control devices." Plaintiffs contend that DOT's duty to maintain New Mexico's highways entailed a responsibility to place a concrete barrier, also known as a "Jersey" barrier, between eastbound and westbound traffic on NM 502 pursuant to a statutory duty under NMSA 1978, Section 66-7-102(A) (2003) ("The state transportation commission shall place and maintain such traffic-control devices . . . as it deems necessary . . . or to regulate, warn or guide traffic."). Plaintiffs urge that concrete barriers in the center turn lane would be traffic-control devices that come under the purview of maintenance and, thus, DOT is not immune from suit for its failure to install such barriers.

**{13}** During argument on the motions for summary judgment, Plaintiffs recognized that immunity had not been waived for design of roadways. However, they pointed to *Rutherford* as representing an erosion of our rule in *Villanueva*. As such, they argued that we should impose a waiver of immunity in this case. We recognize that the addition and changing of traffic-control devices has been increasingly litigated under the waiver of immunity, but decline to erode the rule where New Mexico has not abrogated sovereign immunity for injuries caused by the design of a roadway. For the reasons given in this Opinion, we are unpersuaded.

**{14}** In determining whether concrete barriers constitute a traffic-control device in this case, we draw on cases in which our appellate courts have examined the difference between maintenance and design. Changing signage and erecting portable barriers has come under the rubric of maintenance thus far. *See Rutherford*, 2003-NMSC-010, ¶ 9 (determining that portable barricades used to prevent motorists from crossing a flooded road was a method of traffic control); *Bierner*, 2004-NMCA-093, ¶ 21 ("[E]rected barriers or curbs . . . appear to

5

involve design [for which] Section 41-4-11(B) grants immunity."); *Pollock v. State Highway & Transp. Dep't*, 1999-NMCA-083, ¶ 11, 127 N.M. 521, 984 P.2d 768 (determining that the placement of "Wrong Way" and "Do Not Enter" traffic warning signs were within the Act's meaning of maintenance (internal quotation marks and citation omitted)); *Villanueva*, 1998-NMCA-138, ¶ 8 (deciding that the addition of wheelchair ramps was not maintenance because it involved a structural change to the sidewalk); *Ryan v. N.M. State Highway & Transp. Dep't*, 1998-NMCA-116, ¶ 8, 125 N.M. 588, 964 P.2d 149 (declaring that the defendant had a duty to put up warning signs if the defendant had notice of a dangerous condition created by wild animal crossings). In contrast, structural changes, resulting in permanent alterations to a road's original design, have been granted immunity.

{15}    From these cases, it appears that a line between maintenance and design is in part influenced by whether the plaintiffs' harm was caused by changing conditions that can be addressed by the use of traffic-control devices, the state's purported failure to respond to such conditions of which it had prior notice, or whether the plaintiffs' harm was caused by the inherent nature of the road itself as designed. For example, with regard to a duty to place traffic signs, this Court in *Ryan* concluded that the state's ostensible notice of animal crossings necessitated a response—placement of signs—to ensure that ordinary care was taken to protect the public. 1998-NMCA-116, ¶ 12. Similarly, in *Rickerson v. State*, light signals were required because of increased traffic flow. 94 N.M. 473, 475, 612 P.2d 703, 705 (Ct. App. 1980). In *Rutherford*, the Supreme Court held that dangerously high flood waters, as a predictable result of occasional storms upstream, changed road conditions such that they required the county to quickly respond with temporary barricades. 2003-NMSC-010, ¶¶ 9-10.

{16}    In *Villanueva*, this Court rejected the plaintiff's argument that a failure to construct wheelchair ramps was maintenance where none were designed to exist. 1998-NMCA-138, ¶ 8. We stated such an addition would be a significant structural change that constituted an installation or reconstruction and "not a matter of routine maintenance." *Id*. Plaintiffs rely on *Rutherford* and cases from other jurisdictions to support their claim that installing barriers is maintenance. We disagree, as *Rutherford* does not address permanent changes to a road's design, and our statute conferring immunity is outside the purview of other states' law. *See* 2003-NMSC-010, ¶ 25 (holding that "identification and remediation of roadway hazards constitutes highway maintenance"). The district court correctly saw the issue presented by Plaintiffs' motion for partial summary judgment as separating the issue of whether immunity was waived for aspects of the road's design from factual issues concerning maintenance for problems of which DOT may have been on notice that maintenance was required.

{17}    Plaintiffs attempt to contrast our dicta in *Bierner*, 2004-NMCA-093, ¶ 21, concerning curbs and barriers "appear[ing] to involve design" with the Supreme Court's treatment of barricades in *Rutherford* as being a method of traffic control. We believe the contrast is illustrative of the propriety of granting immunity. *Bierner* involved the plaintiffs' argument that a road in Truth or Consequences should have had permanent barriers and curbs to prevent vehicles from rolling across a street and into a business. 2004-NMCA-093, ¶ 3. In contrast, the barricades in *Rutherford* were described by the Supreme Court as temporary traffic-control devices that fit within the meaning of maintenance because they were not

6

designed to be permanent, but would come and go as needed to prevent the public from driving into the rushing waters of a flash flood—a transient, yet predictable, condition. *See* 2003-NMSC-010, ¶ 9. The barricades were placed on the road as needed, not permanently built into the road for a distance of miles. *See id.* ¶ 2. Our ruling in *Villanueva* and comment in *Bierner*, even though dicta, both hinged on the difference between guiding traffic and designing permanent attributes of a road itself. Though our comment in *Bierner* might have been dicta for that case, we now conclude that erection of permanent barriers as part of a road constitutes a matter of road design.

**{18}** The addition of permanent concrete barriers, as Plaintiffs demand in this particular case, is not a method of traffic control within the meaning of maintenance under the Act. Erected Jersey barriers are concrete, dense structures, the placement of which is not simple or uncomplicated. *See* Charles F. McDevitt, *Basics of Concrete Barriers*, Vol. 63 No. 5 (2000), *available at* http://fhwicsint01.fhwa.dot.gov/publications/publicroads ("Concrete barriers appear to be simple and uncomplicated, but in reality, they are sophisticated safety devices."). The barricades in *Rutherford* were placed on and removed from the road as needed. They would not change the design or structure of the road on which they appeared. The road would then be returned to its original state after the floodwaters resided. Such is not the case with the structural changes proposed by Plaintiffs, which are not a matter of upkeep and repair or routine maintenance and, thus, reside outside the Act's conferred waiver of immunity.

**{19}** In addition, Plaintiffs also contend that DOT had a duty to place barriers in the road upon learning about its dangerous design. Plaintiffs asserted that DOT had "designed an inherently dangerous stretch of road" and that the road had been "redesigned and reconstructed" to its current configuration without barriers in the center turn lane. Plaintiffs allege that following the redesign of NM 502 in 1993, there was evidence of the road's changed conditions requiring installation of barriers in the center turn lane: four fatal accidents over a period of six years, two citizens' complaints made to DOT, and several newspaper articles highlighting the dangerousness of the road. In Plaintiffs' summary judgment motion, they attribute the accident to a number of factors, but state that the accident occurred "mostly, because DOT created an inherently dangerous condition when it designed NM 502." Their exhibits mentioned accidents over an eleven-and-a-half-mile stretch of road. Yet, their motion for summary judgment asserted fault within a barrier-free, two-mile-long stretch of road. Plaintiffs' proposed change—a concrete barrier—is also relevant to our analysis. They contend that upon receiving notice of the dangers created by the redesign, DOT had a maintenance duty to place a barrier in the road.

**{20}** We reiterate that, as yet, the principle of maintenance has not been applied to describe a responsibility to alter a road's design. Moreover, it has never been applied to transcend the immunity that Section 41-4-11(B)(2) restored to the state for design, construction, or reconstruction of a highway in the event the state's design for that construction was somehow faulty. For instance, when the highway department erected a fence, it had a duty to maintain it and, failing to do so, invoked its duty to carry out its proper maintenance responsibilities. *See Lerma ex rel. Lerma v. State Highway Dep't*, 117 N.M. 782, 784, 877 P.2d 1085, 1087 (1994) (concluding that the state has a duty to exercise

7

ordinary care to protect the public from foreseeable harm resulting from its maintenance of roads). Similarly, in *Rutherford*, the design of the road itself was not at issue when the court held that the county had a duty to use temporary barricades to halt traffic during storms in order to protect the public from the known danger of flash floods. 2003-NMSC-010, ¶ 9. These cases deal with attributes that fall short of design and construction or reconstruction of the road itself under Section 41-4-11(B). Thus, we will not apply them in this instance to give rise to a duty for DOT to alter the design of NM 502.

{21} To the extent that the district court's statements from the bench indicate that, at some point, DOT might acquire notice of a dangerous condition sufficient to require it to redesign or reconstruct a highway, we make two observations. First, such considerations are outside the purview of the immunity retained for DOT concerning the design and construction of NM 502. The district court granted summary judgment to DOT, finding it immune as to the issue of design of the road, leaving only the issue concerning the accumulation or effect of the cinders at the location of the accident. Secondly, any indication that a notice-based obligation to redesign or reconstruct a road might fall outside the state's immunity from suit is not supported by New Mexico law. Our opinion is not affected by the district court's possible reliance on this statement in granting the partial summary judgment because we are empowered to affirm the district court in those instances where the court was right for the wrong reasons. *Capco Acquisub, Inc. v. Greka Energy Corp.*, 2008-NMCA-153, ¶ 35, 145 N.M. 328, 198 P.3d 354. We affirm because the lack of permanent barriers in the center turn lane was an attribute of the design of NM 502 and, as a result—and as the summary judgment reflects—DOT is immune from suit because of Section 41-4-11(B). Thus, we affirm the district court's holding that DOT is, as a matter of law, immune from suit for its alleged failure to install concrete barriers. We must now address the remaining issues from the trial concerning evidentiary matters and jury instructions.

B.    Evidentiary Issues

{22} Plaintiffs make three evidentiary claims: (1) evidence pertaining to DOT's failure to sweep gravel in the center turn lane was incorrectly excluded, (2) a toxicology report concerning Espinoza and evidence that he possessed a gun and drug paraphernalia were improperly admitted, and (3) DOT's expert testimony was improperly admitted. We address the claims below in this order.

{23} Under New Mexico's Rules of Evidence, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Rule 11-403 NMRA. A district court's evidentiary decisions are reviewed for abuse of discretion. *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.*, 2005-NMCA-051, ¶ 19, 137 N.M. 524, 113 P.3d 347. A district court is given great discretion in determining whether the probative value of evidence is substantially outweighed by the risk of unfair prejudice, confusion of the issues, or misleading the jury. *State v. Dombos*, 2008-NMCA-035, ¶ 33, 143 N.M. 668, 180 P.3d 675. A district court's decision will not be disturbed unless "the ruling is clearly against the logic and effect of the facts and circumstances of the case [and] is clearly untenable or is not justified by reason." *Heath v. La Mariana Apartments*, 2007-NMCA-003, ¶ 18, 141 N.M.

131, 151 P.3d 903 (internal quotation marks and citation omitted), *aff'd*, 2008-NMSC-017, 143 N.M. 657, 180 P.3d 664.

**{24}** First, Plaintiffs argue that the district court incorrectly excluded evidence demonstrating a dangerous condition that related to DOT's duty to sweep gravel in the center turn lane. Plaintiffs attributed the accident to Griego's speed, his use of the center turn lane for passing, the presence of cinders in the center turn lane, and "mostly, DOT['s creation of] an inherently dangerous condition when it designed NM 502." The supporting exhibits tendered by Plaintiffs provided evidence of cross-over accidents attributed to a possible heart attack, drowsy drivers, possibly drunk drivers, unknown causes excluding wet and snowy conditions, and one article stating that most accidents "involve cars hitting guard rails, barricades, embankments or curbs." The evidence the district court decided to exclude included (1) facts from prior fatal accidents that occurred in the vicinity of the decedents' accident, (2) newspaper articles describing these prior accidents and the dangerousness of NM 502, (3) testimony from two citizens who expressed their concern to DOT about unsafe conditions on NM 502, (4) testimony from Plaintiffs' expert that center turn lane barriers could have prevented the deaths of Espinoza and Martinez, and (5) other information pertaining to the configuration of NM 502.

**{25}** In excluding the evidence of prior accidents, the district court determined that the previous accidents occurred too far from the location of decedents' accident to prove that the same defect or dangerous condition was present. Without a connection between the previous accidents and the decedents' accident, the district court held that evidence of the prior accidents was irrelevant to DOT's duty to sweep gravel.

**{26}** Similarly, the district court excluded the newspaper articles, citizen complaints, testimony by Plaintiffs' expert, and evidence pertaining to the configuration of the road on the basis that this evidence dealt with the design of the road and was unrelated to DOT's duty to sweep gravel in the center turn lane. Plaintiffs argue that the exclusion of this evidence forced the jury to decide DOT's negligence in a vacuum. We disagree.

**{27}** In the cases discussed above that shape DOT's liability for failing to maintain the road to prevent or ameliorate known conditions, the duty for the governmental entity to act was determined based on its knowledge of specific risks requiring maintenance on its part. This connection was demonstrated in *Rickerson*, 94 N.M. at 476, 612 P.2d at 706 (holding that the state had a duty to install traffic signals at a place in the road known to be confusing), in *Villanueva*, 1998-NMCA-138, ¶¶ 8, 12 (stating that the state is not liable for failing to construct wheelchair ramps, but it has a duty to keep sidewalks in a safe condition) and, in *Rutherford*, 2003-NMSC-010, ¶¶ 9, 25 (concluding that temporary barriers were required when the state had knowledge of the nature of the road during flash floods). These accidents also occurred in different places on NM 502 than the location of the present accident. Thus, viewing the factual disparities involved, the district court could determine that their probative value was insufficient to allow their admission. In view of DOT's immunity for the design and construction of the center turn lane, and the absence of a direct connection between the evidence of previous complaints and accidents to DOT's duty to sweep gravel in the center turn lane, Plaintiffs' evidence has little, if any, probative value.

9

As a result, we cannot hold that the district court's decision to exclude this evidence was "clearly against the logic and effect of the facts and circumstances of the case[.]" *Heath*, 2007-NMCA-003, ¶ 18 (internal quotation marks and citation omitted).

**{28}** Second, Plaintiffs argue that the results of Espinoza's toxicology report, and the contents of the black bag found in Martinez's vehicle, were improperly admitted. The district court admitted this evidence on the basis that it went to the issue of damages. According to the district court, Espinoza's drug use and possession of drugs at the time of his death were important factors in assessing Plaintiffs' request for lost wages and loss of consortium damages. Plaintiffs insist that the admission of this evidence was highly prejudicial and without probative value, and DOT failed to present a link between Espinoza's drug use and what the district court considered was relevant to his diminished life expectancy and earning capacity.

**{29}** Plaintiffs rely on *Romero v. State*, in which the Court found that a district court did not abuse its discretion in excluding evidence of a passenger's intoxication. 112 N.M. 332, 333, 815 P.2d 628, 629 (1991), *receded from on different grounds by Dunleavy v. Miller*, 116 N.M. 353, 862 P.2d 1212 (1993). While *Romero* is relevant in that it demonstrates that the exclusion of such evidence is not an abuse of discretion, it is silent as to whether the inclusion of such evidence is an abuse of discretion. While we are not unsympathetic to Plaintiffs' argument, we also recognize that jury instructions were given to limit the potential prejudicial effect on jurors, and Plaintiffs were free to argue the weight of the evidence. Thus, we cannot declare the district court's decision was completely against logic to assume that a victim's drug use does, to some extent, have an affect on his earning capacity. Thus, we uphold the district court's admission of this evidence.

**{30}** Third, Plaintiffs contest the district court's admission of DOT's expert witness, Dr. Pike, whose testimony concerned Griego's intoxication. A district court's admission of an expert witness will not be reversed absent a showing of abuse of discretion. *Chavez v. Bd. of Cnty. Comm'rs*, 2001-NMCA-065, ¶ 35, 130 N.M. 753, 31 P.3d 1027. Moreover, "remedies for the violation of discovery rules or orders are discretionary with the trial court." *Id*. Plaintiffs assert that DOT's late disclosure of Dr. Pike as a witness violated the trial scheduling order, as the doctor was only identified a few days before trial was to begin. To remedy the late disclosure, the district court gave Plaintiffs a one-hour telephone interview and permitted them to submit a rebuttal witness.

**{31}** We conclude that the district court did not abuse its discretion in admitting Dr. Pike's testimony. Plaintiffs had notice of DOT's intent to call a toxicologist to testify concerning Griego's impairment weeks in advance. Moreover, the court remedied the situation by giving Plaintiffs the opportunity to interview Dr. Pike and to call a rebuttal witness. These were appropriate remedies even when a witness is not disclosed until after the trial begins. *See State v. Ruiz*, 2007-NMCA-014, ¶¶ 50-54, 141 N.M. 53, 150 P.3d 1003 (stating the district court did not abuse its discretion by admitting a surprise rebuttal witness because the opposing party failed to show materiality, prejudice, and the inadequacy of the court's remedy).

10

**{32}** In demonstrating that the district court abused its discretion, Plaintiffs rely on *Khalsa v. Khalsa*, 107 N.M. 31, 751 P.2d 715 (Ct. App. 1988), and *Shamalon Bird Farm, Ltd. v. U.S. Fidelity & Guarantee Co.*, 111 N.M. 713, 809 P.2d 627 (1991). Plaintiffs argue that this Court should, like this Court in *Khalsa* and the Supreme Court in *Shamalon Bird Farm*, "find that Plaintiffs were unfairly prejudiced by the belated identification of Dr. Pike." In *Khalsa*, a child custody case, we reversed the district court's decision in part because the father had no opportunity to interview the witnesses or call a rebuttal witness after the mother's surprise witness testified. 107 N.M. at 34-35, 751 P.2d 718-19. Yet, in the case at hand, Plaintiffs had the opportunity to both interview Dr. Pike and call a rebuttal witness. Thus, Plaintiffs did not suffer the prejudice that occurred in *Khalsa*.

**{33}** Additionally, in *Shamalon Bird Farm*, the Supreme Court upheld the district court's decision to exclude the plaintiff's witness at trial in a case where the plaintiff brought suit against its insurer for bad faith failure to pay insurance benefits. 111 N.M. at 716, 809 P.2d at 630. The Supreme Court reasoned that the testimony of the plaintiff's witness was surprise testimony because the factual basis for the witness's opinions was virtually unknown to the defendant the night before the trial. *Id*. at 715, 809 P.2d at 629. In contrast, Plaintiffs in this case were well aware that Dr. Pike's testimony would be based on Griego's toxicology report. Thus, we decline to reverse on grounds that Plaintiffs suffered prejudice from the testimony of Dr. Pike because of unfair surprise.

**{34}** Lastly, Plaintiffs contend that Dr. Pike's testimony was cumulative as a state police officer had already testified on Griego's impairment. However, at the time of that officer's testimony, Plaintiffs objected to his opinion on the issue, citing that he did not have the technical or medical expertise to make such judgments. Admitting Dr. Pike's medical and professional opinions on Griego's impairment provided what the officer could not, but we see no cause for reversal. Furthermore, Dr. Pike's testimony was not cumulative because it was offered as a scientific interpretation of Griego's toxicology report.

**{35}** We conclude the district court did not abuse its discretion by permitting Dr. Pike to testify. The district court provided Plaintiffs a remedy to DOT's late identification. Moreover, Plaintiffs knew the factual basis of Dr. Pike's testimony, and his testimony was not cumulative.

## C.    Jury Instructions

**{36}** Plaintiffs contend that the district court's jury instructions were improper because they were denied the right to submit two additional instructions: (1) an open and obvious danger does not lessen DOT's obligation to protect the public from foreseeable negligence, and (2) notice was not required where DOT created the dangerous condition. "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *Akins v. United Steelworkers of Am.*, 2009-NMCA-051, ¶ 42, 146 N.M. 237, 208 P.3d 457 (internal quotation marks and citation omitted), *aff'd*, 2010-NMSC-031, 148 N.M. 442, 237 P.3d 744. However, a case will not be reversed on the basis of an error in jury instructions unless the result is fundamentally unjust. *McNeill v. Burlington Res. Oil & Gas Co.*, 2007-NMCA-024, ¶ 19, 141 N.M. 212, 153 P.3d 46, *aff'd*, 2008-NMSC-022, 143 N.M. 740, 182

11

P.3d 121. The party complaining of jury instructions must show prejudice before reversal is granted. *Blackburn v. State*, 98 N.M. 34, 37, 644 P.2d 548, 551 (Ct. App. 1982). Moreover, there is no error in jury instructions when the instructions given adequately cover the law to be applied. *Kirk Co. v. Ashcraft*, 101 N.M. 462, 466, 684 P.2d 1127, 1131 (1984).

{37}    In this case, Plaintiffs have not shown how the refusal to include these instructions prejudiced their case. Plaintiffs simply allege that the extensive questioning of one of DOT's witnesses, Raymond Helmer, was so significant in that the jury requested clarification of his testimony. It is unclear how this is related to the alleged deficiency of jury instructions in any way. Additionally, it appears that the jury instructions provided by the court fairly presented the issues and laws applicable to this case. We therefore reject Plaintiffs' claim that jury instructions were improper.

### D.    Loss of Consortium

{38}    Plaintiffs ask this Court to provide guidance on the issue of whether grandparents should be permitted to bring a loss of consortium claim for an unborn grandchild. Plaintiffs admit that there is no law on this issue. Nevertheless, they contend that other New Mexico consortium cases could extend this right to grandparents. It is unnecessary for us to decide this issue. As DOT correctly points out, our decision on this issue will not affect the disposition of the case because any hypothetical additional loss of consortium claim is moot since the jury found that DOT was not negligent. Thus, we deny Plaintiffs' request to provide guidance on this issue.

### III.    CONCLUSION

{39}    We affirm the district court's order of partial summary judgment to DOT as the use of concrete barriers in this case is an issue of design for which DOT is afforded immunity. We also affirm the district court's evidentiary decisions and the district court's exclusion of Plaintiffs' proposed jury instructions. We refrain from providing guidance on whether grandparents can bring a loss of consortium claim for an unborn grandchild.

**{40}    IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**JONATHAN B. SUTIN, Judge**

12

**Topic Index for *Martinez v. N.M. Dep't of Transp.*, Docket No. 28,661**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |
| | |
| **EV** | **EVIDENCE** |
| EV-AE | Admissibility of Evidence |
| EV-DR | Drug Testing |
| EV-EW | Expert Witness |
| EV-PJ | Prejudicial Evidence |
| EV-PB | Probative Value vs. Prejudicial Effect |
| | |
| **JI** | **JURY INSTRUCTIONS** |
| JI-CI | Civil Jury Instructions |
| JI-IJ | Improper Jury Instructions |
| | |
| **ST** | **STATUTES** |
| ST-AP | Applicability |
| ST-CS | Conflicting Statutes |
| ST-CN | Constitutionality |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |
| | |
| **TR** | **TORTS** |
| TR-IM | Immunity |
| TR-LC | Loss of Consortium |
| TR-NG | Negligence |
| TR-TA | Tort Claims Act |
| TR-WD | Wrongful Death |